## UNITED STATES *v.* RHODES.

*(Circuit Court, W. D. Missouri, E. D.   January, 1887.)*

FRAUDULENT PENSION CLAIM—FALSE DEPOSITION—INDICTMENT—REV. ST. U. S. § 5438.

An indictment charging the defendant with making a false deposition in order to enable another to obtain payment of a fraudulent pension claim, in violation of section 5438 of the Revised Statutes of the United States, need not allege that the false deposition was ever used or attempted to be used, or set out the fact that the claim had been presented and was pending before the government at the time the deposition was made.

Indictment under Rev. St. U. S. § 5438, for false affidavit to pension claim.   Motion to quash.

*M. E. Benton,* for the United States.

*Delaney & Boyd,* for defendant.

BREWER, J.   At the September term, 1886, of the United States district court for the Eastern division of the Western district of Missouri, the defendant, Thomas W. Rhodes, was indicted under section 5438 of the Revised Statutes of the United States.   So much of this section as refers to the charges against him is as follows:

Every person who makes or causes to be made, or presents or causes to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining, or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, shall be imprisoned at hard labor for not less than one nor more than five years, or fined not less than $1,000 nor more than $5,000.

The indictment contained 10 counts.   The following is a copy of each count, except the date when the alleged affidavit was made, each count covering a different date:

*United States of America, Eastern Division of the Western District of Missouri—ss.:*

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DIVISION OF THE WESTERN DISTRICT OF MISSOURI—September Term, 1886.

The grand jurors of the United States of America duly chosen, selected, impaneled, sworn, and charged to inquire of and concerning crimes and offenses in the Eastern division of the Western district of Missouri, on their oaths present that on the eleventh day of June, A. D. 1885, at the said Eastern division of the Western district of Missouri, one Thomas W. Rhodes, to-

gether with one Minerva J. Rhodes and an unknown female person, who then and there represented herself to be one Tibatha McDaniel, widow of W. E. McDaniel, deceased, late a private in Company C of the sixteenth regiment of Illinois volunteers, and as such widow entitled to a pension from the United States of America; all and each appeared before one William D. Steele, a notary public, and as such authorized by the laws of the United States to administer oaths; and the said unknown person then and there signed a certain pension claim and voucher as the widow of said William E. McDaniel, and by the name of Tibatha McDaniel, and under which was printed the following deposition, viz.: "We, the undersigned witnesses, do solemnly swear that we are well acquainted with the above-named pensioner, [meaning thereby the said unknown person, who had, as aforesaid, signed the name Tibatha McDaniel;] that she is the identical person she represents herself to be; and that to our best knowledge and belief she has not remarried since the death of her late husband, above named, and that our acquaintance with her is such that, if she had resumed marriage relations the fact would have become known to us." Which said deposition was then and there signed by the said Thomas W. Rhodes; and the said Thomas W. Rhodes, being then and there sworn by the said William D. Steele, who was a notary, as aforesaid, duly authorized to administer oaths in that behalf, and having taken upon himself his corporal oath, did then and there unlawfully and feloniously say and swear that the matters and things set forth in said deposition were true; whereas, in truth and in fact said unknown person so representing herself to be Tibatha McDaniel, the widow of said William E. McDaniel, was not, as the said Thomas W. Rhodes knew, the widow of the said William E. McDaniel. And so the jurors aforesaid, upon their oaths aforesaid, do say that he, the said Thomas W. Rhodes, did then and there and thereby, for the purpose of aiding to obtain the payment of said claim upon such false voucher, unlawfully and feloniously make a false deposition in the manner and form aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of said United States.

The defendant moved to quash the indictment, because (1) the authority of the alleged notary public to administer an oath does not appear; (2) there are no allegations stating when or where the pretended oath was administered and deposition made; (3) it does not appear that a false claim was made upon or against the government of the United States; (4) it is not alleged that a claim was made upon the government of the United States for payment or approval; (5) it is not alleged that the false deposition was made to obtain, or aid in obtaining, the payment or approval of a false claim made upon the government of the United States for payment or approval; (6) it is not alleged that said deposition was used to obtain or aid in obtaining, the payment or approval of such a claim.

The first two objections may be disposed of in a word. Both time and place are averred, and it is alleged that the notary public was authorized to administer oaths. Neither his commission nor authority need be set out in full. Section 5396, Rev. St. U. S. Notaries public are appointed by the states, and the act of congress gives them authority to administer oaths. Section 1778, Rev. St. U. S. It is true that their authority is limited territorially, and that a notary public appointed by the state of Illinois may not have authority to administer oaths in Missouri; but, if the officer be of a class having generally authority to ad-

minister oaths, the express language of section 5396 is that it is sufficient to name the officer, and aver that he was authorized, without setting out his special authority or commission.

The other objections may be considered together. It is obvious that the section quoted contemplates two classes of crime, one the making or presenting of a false claim, and the other the making of a false affidavit or deposition for the purpose of obtaining, or aiding to obtain, payment or approval of a false claim. The offense in the case at bar belongs to the latter class. Now, the argument of the learned counsel for defendant runs along two propositions: *First,* that it is not averred that the false deposition was ever used, or attempted to be used, and therefore there was only a preparation for and not the commission of an offense. (Potter's Dwar. St. 144; 3 Lawson, Crim. Def. 647;) *second,* there must be a false claim in support of which the false deposition is used, or intended to be used, and that to constitute a false claim there must be a demand presented, and therefore that the indictment is faulty in not setting out in full the nature of the false claim, and before whom and when presented. *U. S. v. Miskell,* 15 Fed. Rep. 369.

With regard to the first proposition there can be but little doubt. Beyond question, many things may be done with a view to the commission of crime which do not constitute a crime, or even an attempt to commit a crime, and which are but mere preparations therefor, and not within the reach of punitive law. But it is clearly within the legislative power to make criminal and punish as crime any overt act in itself wrong and done with the intent of aiding in the accomplishment of some well-understood and already defined crime or recognized fraud. Thus congress has declared that the mere making of counterfeit money is a crime, although no intent be proved to ever pass or use a dollar. So here it was declared that the mere making of a false deposition, with the specified wrongful purpose, is a crime; and it is not necessary to allege or prove that such false deposition was in fact ever used, or attempted to be used. This is not an attempt to punish a mere criminal intent. It is the punishment of a wrongful act done with criminal intent. It intercepts the offender before the full accomplishment of the ultimate wrong intended, and punishes him for a wrongful act done in furtherance thereof.

The other proposition presents a matter of more difficulty. To constitute the crime charged there must be a false claim, a false deposition, and an intent to use the latter in obtaining, or aiding to obtain, the payment or approval of the former. This is clear. But is it necessary that the false claim be one already presented, and pending before the government, or some officer thereof? The language of the section does not so imply. Two offenses, as heretofore stated, are provided for. Whoever makes or presents, for payment or approval, a false claim is denounced by one part of the section. Clearly, the word "claim" is not here used in the sense of a demand already theretofore presented. It implies only a demand then existing, and known to be wrongful, and the act of presenting it in the first instance is denounced as a crime. And the further

language of the section is "such claim," and denounces the making of a false deposition for the purpose of obtaining the payment or approval of such a claim. Is the word "claim" used in the same sense in this part of the section, or is it narrowed and limited so as to refer only to such claims as have been already presented, and are pending for action? Grammatically and ordinarily the same meaning would be understood.

The case cited, U. S. v. Miskell, supra, does not decide anything to the contrary. It simply holds that the claim must be false, as well as the affidavit or deposition, and that a false affidavit to sustain a just and true claim is not within the denunciation of the section. Nor is there any reason in morals or law for thus narrowing the meaning. He who makes a false deposition to-day for the purpose of obtaining the approval or payment of a false claim to be presented to-morrow deserves punishment as justly as he who makes a like deposition in support of such a claim presented yesterday.

Finally, it may be remarked that it is clearly charged that the claim was false; that the deposition was false. Knowledge of the falsity is averred, as well as the purpose to use the false deposition in obtaining payment of the false claim. While a defendant should be clearly informed in the indictment of the exact and full charge made against him, yet no defect or imperfection in matter of form only,—and this includes the manner of stating a fact,—which does not tend to his prejudice, will vitiate the indictment. Section 1025, Rev. St. U. S.; U. S. v. Noelke, 1 Fed. Rep. 426; U. S. v. Jackson, 2 Fed. Rep. 502.

The motion to quash will be overruled.