## MARKS v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 8, 1912.)

No. 200.

1. INTERNAL REVENUE (§ 11*) — OFFENSES — "MANUFACTURE" OF SMOKING OPIUM.

Any process by which crude opium is converted into a product fit for smoking constitutes a "manufacture" of smoking opium within the meaning of the Internal Revenue Act Oct. 1, 1890, c. 1244, §§ 36–40, 26 Stat. 620, 621 (U. S. Comp. St. 1901, pp. 2226, 2227), which impose a tax upon all opium manufactured for smoking purposes in the United States, and prescribe regulations for such manufacture to be observed under penalty of criminal prosecution.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 29, 36–38; Dec. Dig. § 11.*

For other definitions, see Words and Phrases, vol. 5, pp. 4344–4346; vol. 8, p. 7716.]

2. INTERNAL REVENUE (§ 4*)—MANUFACTURE OF SMOKING OPIUM—STATUTE REGULATING.

Internal Revenue Act Oct. 1, 1890, c. 1244, §§ 36–40, 26 Stat. 620, 621 (U. S. Comp. St. 1901, pp. 2226, 2227), taxing and regulating the·manufacture of smoking opium, were not repealed nor their application narrowed by Act Feb. 9, 1909, c. 100, 35 Stat. 614 (U. S. Comp. St. Supp. 1911, p. 741), which prohibits the importation of opium for other than medicinal purposes.

[Ed. Note.—For other·cases, see Internal Revenue, Cent. Dig. §§ 4, 5; Dec. Dig. § 4.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against Isaac Marks. Judgment of conviction, and defendant brings error. Affirmed.

Writ of error to review a judgment entered upon the verdict of a jury finding the plaintiff in error (hereinafter called the defendant) guilty of the violation of sections 36 and 37 of the Act of Oct. 1, 1890, c. 1244, 26 Stat. 620 (U. S. Comp. St. 1901, p. 2226), relating to the manufacture of smoking opium.

The relevant sections of the Act of 1890, and also of the Act of February 9, 1909, c. 100, 35 Stat. 614 (U. S. Comp. St. Supp. 1911, p. 741), which are considered in the opinion, are printed in the footnote.[1]

Houghton & Marx (Louis Jersawitz, of counsel), for plaintiff in error.

Henry A. Wise, U. S. Atty., and J. Neville Boyle, Asst. U. S. Atty.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

[1] Act Oct. 1, 1890 (26 Stat. 620, 621):

"Sec. 36. That an internal revenue tax of ten dollars per pound shall be levied and collected upon all opium manufactured in the United States for smoking purposes; and no person shall engage in such manufacture who is not a citizen of the United States and who has not given the bond required by the Commissioner of Internal Revenue.

"Sec. 37. That every manufacturer of such opium shall file with the collector of internal revenue of the district in which his manufactory is located such notices, inventories and bonds, shall keep such books and render such returns of materials and products, shall put up such signs and affix such number to his factory, and conduct his business under such surveillance of officers and agents as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may, by regulation, require. * * *

"Sec. 40. That a penalty of not more than one thousand dollars, or imprisonment not more than one year, or both, in the discretion of the court, shall be imposed for each and every violation of the preceding sections of this act relating to opium by any person or persons; * * * *"

Act Feb. 9, 1909 (35 Stat. at Large, c. 100, p. 614):

"Sec. 1. That after the first day of April, nineteen hundred and nine, it shall be unlawful to import into the United States opium in any form or any preparation or derivative thereof: Provided. That opium and preparations and derivatives thereof, other than smoking opium or opium prepared for smoking, may be imported for medicinal purposes only, under regulations which the Secretary of the Treasury is hereby authorized to prescribe, and when so imported shall be subject to the duties which are now or may hereafter be imposed by law.

"Sec. 2. That if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any opium or any preparation or derivative thereof contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such opium or preparation or derivative thereof after importation, knowing the same to have been imported contrary to law, such opium or preparation or derivative thereof shall be forfeited and shall be destroyed, and the offender shall be fined in any sum not exceeding five thousand dollars nor less than fifty dollars or by imprisonment for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have, or to have had, possession of such opium or preparation or derivative thereof, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury."

NOYES, Circuit Judge (after stating the facts as above). The indictment charges violations of the Act of 1890 relating to the manufacture of smoking opium. The first count avers that the defendant engaged in such manufacture without giving the required bond. The second alleges that he did so without paying the required tax. The third charges that he did so without obeying the regulations governing the conduct of the business.

[1] Assuming that the process through which the defendant put the opium amounted to "manufacture" within the statute, it is clear that the evidence warranted the jury in finding the defendant guilty of its violation. He did not give any bond, pay any tax, or obey any of the regulations for the conduct of the business of manufacturing smoking opium. The testimony showed that both crude opium and smoking opium were found upon his premises. An opium smoking outfit was also found and the various receptacles in which it is the custom to retail smoking opium. Apparatus for heating opium was also found and utensils for treating it. The jury may well have determined that the so-called "opicurine" was merely diluted smoking opium.

The first question, then, is whether the acts of the defendant in converting the crude opium product into the smoking opium did amount to its manufacture within the meaning of the act.

The purpose of the statute is to tax and regulate the manufacture of smoking opium and it applies, manifestly, to any process by which the crude opium is converted into a product fit for smoking. Any such process constitutes manufacture within such a limited statute even if it might not amount to manufacture under a statute of general application. The contrary is the equivalent of saying that the manufacture of smoking opium cannot be regulated because it is not a manufactured product. If there had been a statute in the Anheuser-Busch Case, 207 U. S. 556, 28 Sup. Ct. 204, 52 L. Ed. 336, specifically allowing drawbacks in the case of manufactured bottle corks, it is by no means certain that, within the meaning of such a statute, the process there described would not have been held to amount to manufacture. Moreover, while in that case it was properly said that the cork after the process was still a cork, it is apparent here that the dry and hard crude opium product was substantially transformed in its nature by the heating and other treatment which it received before it became the molasses-like substance fit for smoking. We are of the opinion that the process of the defendant amounted to manufacture within the statute in question.

[2] But the defendant contends that this conclusion does not end the case and urges that the statute under which the indictment is framed is not in force; that is to say, he claims that the Act of 1890 was repealed in whole or part by the Act of 1909 which—as shown in the footnote—relates to the importation of opium. But the later statute does not in terms repeal the former and presumably both stand if there is anything for them to operate upon. The statute of 1909 must be shown to be repugnant to the Act of 1890 to repeal it or any portion of it.

While the Act of 1909 prohibits the importation of opium except for medicinal purposes, it does not make it a criminal offense to divert it for other purposes unless the party so using it knows "the same to have been imported contrary to law" and it does not apply to opium imported before its enactment. Obviously also it has nothing to do with domestic grown opium.

The Act of 1890 then applies clearly to the manufacture of opium imported after 1909 where the manufacturer has no knowledge that it was unlawfully imported; to the manufacture of opium imported into this country prior to 1909, and to opium grown in this country. In all these cases the Act of 1909 has no application. If the Act of 1890 is inapplicable, the manufacture of opium of these classes can be carried on with impunity.

Moreover, we think that the Act of 1890 should have a still broader application. In our opinion it applies to every case where, as a matter of fact, a man engages in the manufacture of smoking opium in the United States, regardless of whether it was imported before or after 1909 and regardless of his knowledge concerning its importation. If the defendant desired to engage in the manufacture of smoking opium, he was obliged to do it according to law and if he did not do so, he broke the statute of 1890 notwithstanding that in case he knew that the opium he used had been imported contrary to law he might also by receiving the same have violated the statute of 1909.

The statement is made in the defendant's brief in support of its argument that the Act of 1890 is inoperative that the Treasury Department "now refuses to accept the bonds of opium manufacturers as provided by the Act of 1890." We think this statement erroneous. The regulations of the Treasury Department of July 1, 1911, to which our attention has been directed, provide for the giving of bonds. Moreover we do not see how a departmental refusal to accept the bonds prescribed by the statute, would constitute any authority for the defendant to violate the statute. The Treasury Department cannot repeal an act of Congress.

The judgment is affirmed.