## RAU v. UNITED STATES.

### (Circuit Court of Appeals, Second Circuit.   May 14, 1919.)

### No. 233.

1. INTERNAL REVENUE ⟨⇒⟩47—OFFENSES—DEFENSES.
   Under Rev. St. § 3229 (Comp. St. § 5952), empowering Commissioner of Internal Revenue, with advice of Secretary of the Treasury, to compromise any criminal case arising under the internal revenue laws, one who failed to file an income tax return as required by Act Oct. 3, 1917, § 1004 (Comp. St. 1918, § 5896b), cannot be successfully prosecuted for this failure, where the collector of internal revenue offered to compromise on payment of the tax and penalty, and such offer was accepted.

2. INTERNAL REVENUE ⟨⇒⟩47—OFFENSES—DEFENSES—"COMPROMISE."
   Where internal revenue officers, after defendant admitted he had not filed an income tax return as required by Act Oct. 3, 1917, § 1004 (Comp. St. 1918, § 5896b), accepted not only the tax, but the penalty, informing defendant that such payment would end the matter and there would be no indictment, such acceptance and statement was a "compromise," within Rev. St. § 3229 (Comp. St. § 5952), and was a bar to prosecution.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Compromise.]

3. INTERNAL REVENUE ⟨⇒⟩47—OFFENSES—DEFENSES—EVIDENCE.
   In a prosecution for failure to file an income tax return as required by Act Oct. 3, 1917, § 1004 (Comp. St. 1918, § 5896b), that sum paid by defendant to internal revenue officer after he had admitted he did not file the return was retained by the treasury is evidence that the money was received in compromise of the case, which compromise was authorized by Rev. St. § 3229 (Comp. St. § 5952).

4. INTERNAL REVENUE ⟨⇒⟩47—OFFENSES—EVIDENCE.
   In a prosecution for failure to file an income tax return as required by Act Oct. 3, 1917, § 1004 (Comp. St. 1918, § 5896b), the question whether the internal revenue officers compromised the case, as authorized by Rev. St. § 3229 (Comp. St. § 5952), held for the jury.

5. WITNESSES ⟨⇒⟩405(2)—CROSS-EXAMINATION—IMPEACHMENT.
   In a prosecution for failure to file an income tax return as required by Act Oct. 3, 1917, § 1004 (Comp. St. 1918, § 5896b), where defendant took the stand and was cross-examined as to improper and illegal business transactions, the government was bound by his answers as to such collateral matters, and he could not be impeached with reference thereto.

6. CRIMINAL LAW ⟨⇒⟩1053(1)—APPEAL—PREJUDICIAL ERROR.
   Where the trial court improperly allowed the prosecution to offer evidence impeaching defendant, who took the stand, as to testimony given on collateral matters concerning which he was cross-examined, the striking out of such evidence did not cure the error of its admission.

---

⟨⇒⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. INTERNAL REVENUE ☞7—INCOME TAXES—MONEY SUBJECT TO TAXATION.
Where defendant embezzled moneys which were delivered to him to be paid as insurance premiums, he committed a larceny, and the money so received was not subject to taxation under the Income Tax Act.

8. WITNESSES ☞405(2)—EXAMINATION—IMPEACHMENT.
Where defendant takes the stand as a witness, he assumes a dual position, that of a defendant and that of a witness, and while as a witness it is competent for the prosecution to inquire into collateral matters for the purpose of impeaching his credibility, the prosecution is bound by defendant's answers, and cannot call witnesses in rebuttal to show that he was guilty of crimes other than that charged in the indictment.

Ward, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Southern District of New York.

Seymour L. Rau was convicted of violating Act Cong. Oct. 3, 1917, § 1004, making it a criminal offense to fail to file an income tax return as prescribed by law, and he brings error. Reversed.

Henry P. Kieth and Lamar Hardy, both of New York City, for appellant.

Francis G. Caffey, U. S. Atty., of New York City (Francis L. Kohlman, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, J., Circuit Judge. The defendant was indicted and convicted for a violation of section 1004 of the Act of Congress of October 3, 1917, c. 63, 40 Stat. 325 (Comp. St. 1918, § 5896b). This statute makes it a criminal offense for a failure to file an income tax return as prescribed by law. The indictment contains two counts, charging a failure to file a return for the year 1916, and one for the year 1917. The conviction was had on both counts. It was conceded that the defendant did not file a return. The returns for 1916 and 1917 were required to be filed on or before March 1st of the following year. As to 1916, a return was required to be made by each person of lawful age having a net income of $3,000 or over for the taxable year. An exemption of $3,000, plus $1,000 additional, was granted to a person making a return if he was the head of a family or married man with a wife living with him. Section 7, Act Sept. 8, 1916 (39 Stat. 761, c. 463 [Comp. St. § 6336g]). For the year 1917 a return was required in the case of net incomes of $1,000 or over in case of an unmarried person and $2,000 or over in case of a married person.

In pursuance to a request, the defendant appeared at the office of the revenue collector on September 27, 1918, and made a statement of his earnings for 1916 and 1917, which indicated that for the year 1916 the defendant had a net income of $2,000 above exemption, and in 1917 $1,758 net above the exemption. Rau stated that he did. not know these figures were subject to tax, and that he did not know the law, but wanted to pay any tax that was due the government. He was a broker or salesman on commission, and had been in the insur-

ance business for 20 years; also engaged in selling stocks and securities since August, 1917. Of course, his ignorance of the law was no excuse.

Upon the trial, he testified that he never kept books; he had no bank account; that he had been separated from his wife since 1913, and admitted that he made no effort to pay the tax until called upon by the collector. After he saw the collector, he executed income tax returns and gave figures as his correct income for five years, showing that in the year 1917 his net income was $3,834.10, and in 1916, $3,531.22. At a subsequent call at the collector's office, the amount of his tax indebtedness was calculated as $324.62. A certified check was then drawn and given to the official in charge for this amount, plus a penalty of $250 which was imposed. After the acceptance of this check, this indictment was found.

[1] Section 3229 of the Revised Statutes (Comp. St. § 5952) provides:

"The Commissioner of Internal Revenue, with the advice and consent of the Secretary of the Treasury, may compromise any civil or criminal case arising under the internal revenue laws, instead of commencing suit thereon; and, with the advice and consent of the said Secretary and the recommendation of the Attorney General, he may compromise any such case after a suit thereon has been commenced."

This statute authorized a compromise of any criminal or civil obligation. If an offer of compromise was made and accepted, no criminal proceedings could thereafter be successfully prosecuted for failure to pay the tax. Willingham v. United States, 208 Fed. 137, 127 C. C. A. 263.

[2-4] The defendant endeavored to establish that he offered to compromise and that he paid his check for the tax found to be due, together with the penalty, and that this was accepted in compromise of the criminal responsibility. He was entitled to urge this as a defense. We are of the opinion that the District Judge disregarded this right which the defendant had as a defense of the criminal prosecution. The District Judge evidently was of the opinion that the defendant could not defend upon the theory that he had compromised the criminal prosecution, for he stated:

"It makes no difference as to whether he has paid the tax or not."

This and similar remarks occur frequently in the record. For example, the court said:

"I will instruct this jury that it makes no difference whether the amount of the tax which had been agreed upon here was paid or not, so far as the criminal liability of the defendant is concerned."

And again:

"And so it is here—that if this man had committed a violation of the law at the time he made his offer in compromise or settlement, if you find that he willfully failed to file his income tax return under all the evidence of the case beyond a reasonable doubt, I instruct you that such tender of payment would not affect such criminal liability."

This position was taken by the court in reference to other efforts made by the defendant to offer his defense of a compromise of the

criminal prosecution. It is presented by offers of evidence and questions asked of witnesses, to which objections were sustained, tending to show that a compromise was in fact made. Much of this evidence was erroneously excluded by the trial judge.

The defendant testified that—

"At the time of the presentation of the check, Mr. Bowden told me that there would be no further proceedings of any kind or character, that the offer of $324.62, the receipt of the government for that, the offer of $250 in compromise, that in consideration of that there would be no proceedings, no indictment; nothing would be done whatever."

He was then asked if it was on that condition that he paid the money, and his answer thereto, "I did," was stricken out upon objection by the United States attorney. Defendant then attempted to trace the money to the Treasury Department, and endeavored to show that it was never returned; by this making an effort to establish it was received by the United States Treasury after approving the compromise, and this was excluded.

The Commissioner of Internal Revenue had the power and authority by virtue of the statute above referred to, and with the advice and consent of the Secretary of the Treasury, to compromise the criminal case as well as the civil case arising under the internal revenue laws. The compromise may have been made before the institution of the criminal proceedings or after. The provision relating to the necessary consent of the Attorney General evidently intends a compromise after the institution of a civil or criminal action. If the defendant, in good faith, made the payment of the tax and penalty for the purpose of compromising the impending action, he is entitled to full protection and the benefits derived therefrom. If the money was accepted with the promise of immunity from further punishment in a criminal proceeding, it would be a complete defense to this indictment. Willingham v. United States, 208 Fed. 137, 127 C. C. A. 263.

The acceptance, not only of the tax, but of the penalty, coupled with the statement of the internal revenue officer, that payment would end the matter, and that there would be no indictment, if true, would be a good defense. The fact that the money was retained by the United States is some evidence of its acceptance in compromise. We believe that under the facts disclosed in this record, as far as the defendant was permitted to show them, it was required of the court to submit as a question of fact to the jury, under proper instructions, whether or not a compromise was entered into. It was not a question of law for the District Judge. As was said in United States v. Chouteau, 102 U. S. 603, 26 L. Ed. 246:

"He has been punished in the amount paid upon the settlement for the offense with which he was charged, and that should end the present action, according to the principle on which a former acquittal or conviction may be invoked to protect against a second punishment for the same offense."

[5] Since there must be a new trial, we shall advert to errors committed in the admission of evidence, so that there may be no reoccurrence at the new trial.

[6] As a witness, the defendant was interrogated as to alleged improper and illegal transactions with Warwick, Love, and Williams. He denied charges of improprieties in business transactions and alleged embezzlements or grand larceny of money. These were matters which were collateral, and inquired into by the government attorney for the first time, and the answers thereto were binding upon the government. People v. De Garmo, 179 N. Y. 130, 71 N. E. 736. Typical of these questions were the following:

"Q. Did you ever hold out to him [Robert Warwick] that you were going to give him a policy of that kind? A. I did business with him.

"Q. Did you take any money that was coming to him from any of these policies? A. I did not.

"Q. Did you fail to turn in any of his paid premiums? A. All paid in.

"Q. Did you owe him any money on transactions for these policies? A. Only for personal transactions for money loaned."

And as to transactions with Love:

"Q. Isn't it a fact that you received his check for notes you negotiated? A. No.

"Q. How much did those notes amount to? A. I don't know exactly.

"Q. And do you remember you advised him to take a certain sum of money of his sick benefit policy you had gotten out of him? A. I remember that.

"Q. Do you remember, when you gave him the check, it was short some hundred and odd dollars? A. I don't remember there was anything said about it, because it was not my check; it was the check of the insurance company."

And as to Williams:

"Q. You owe him $1,500? A. I don't know the exact amount. It was not quite as much as that.

"Q. Did you ever make good? A. Yes.

"Q. When? A. Two or three years ago.

"Q. How did that come to be due and owing from you? A. That was owed because the man with whom I was associated in business at that time was handling the business, and there were debits and credits between us, and that transaction happened to come in at that time."

As alleged rebuttal, Warwick was called and testified:

"Q. In plain language, he [the defendant] was to get some insurance policies for you? A. He had them; he took them up.

"Q. And you advanced to him in some form or other certain sums of money? A. I paid him premiums and made my checks out to Seymour L. Rau.

"Q. For how much? A. As near as I remember, they were for $300, and $150 apiece.

"Q. The two made $300? A. Yes.

"Q. Did you thereafter pay the same amount of money on these premiums to the insurance company? A. The insurance company tried to get me to pay again the premiums which I had paid to Mr. Rau.

"Q. How was it found out the premiums had not been paid? A. The insurance company wrote to me for premiums due them, and I told them I paid the premiums to Seymour L. Rau personally. On my failure to again pay the premiums, they canceled the insurance policy.

"Q. On the ground that you had never paid the premiums? A. Yes.

"Q. And you had paid them to Seymour L. Rau? A. Yes."

After objection, the court said:

"I will strike out all of it, and allow the conversations, what the insurance companies did say, that the man was asked to pay his premiums again, and that he failed to pay them again, and the policies were canceled."

The relief thus granted by the court did not take the harm out of the testimony that was improperly received.

[7] Love was then called as a witness and gave testimony of like purport, too lengthy to include in this opinion, indicating that Rau had embezzled moneys paid to him, which were intended to pay premiums on life insurance policies. This was objected to and exception taken. Williams was called and gave similar testimony.

All this testimony was intended to show that the testimony of the defendant, on cross-examination, was untruthful. The government seeks to justify the admission of this testimony upon the theory that the receipt of such moneys had to do with the income tax of the defendant. This cannot be, for if the moneys were merely to be passed on to the insurance company, to be paid as premiums by the defendant, as agent, and if he embezzled them, he committed a larceny, and the money so received would not be subject to taxation under the income tax law. The government was not at liberty to contradict, by such testimony, the defendant on these collateral matters. People v. De Garmo, 179 N. Y. 130, 71 N. E. 736.

[8] When the defendant took the stand as a witness, he assumed a dual capacity; that of a defendant and that of a witness. As a witness, it was competent for the government to interrogate upon any competent subject for the purpose of impeaching his credibility as a witness, and in doing this, might enter the field of matters collateral to the main issue; but they were bound by the answers, and were not permitted to call witnesses in rebuttal tending to show that the defendant was guilty of crimes other than charged in the indictment. People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193; People v. Greenwall, 108 N. Y. 296, 15 N. E. 404, 2 Am. St. Rep. 415. To permit this testimony violated his rights as a defendant, for it charged him with other crimes for which he was not indicted or on trial.

Upon the argument, the United States attorney conceded that a conviction could not be sustained upon count 2 of the indictment; but, since the judgment will be reversed, it is unimportant to discuss the reasons why that conviction cannot be sustained. Upon a new trial, we assume that the indictment will be nolle prosequi upon this count.

Judgment reversed.

WARD, Circuit Judge (concurring). I cannot agree with the majority of the court in holding that the District Judge erred in excluding evidence of the alleged compromise made by the defendant with the revenue collector of his criminal liability for failure to make income tax returns. The check he delivered, as he says, upon the strength of the promise that no criminal action would be instituted, has never been presented by the government for payment. But, apart from this fact, Congress has by section 3229, Rev. Stat. U. S., regulated exactly how the compromise of claims arising under the internal revenue law both before and after suit brought shall be made, and

there is no pretense that the provisions of this section were complied with. In United States v. Chouteau, 102 U. S. 603, 26 L. Ed. 246, cited by the court, the compromise was made strictly in accordance with the requirements of the section, and I think the law was correctly stated in the dissenting opinion in Willingham v. United States, 208 Fed. 137, 127 C. C. A. 263, the other case cited.