## STEINBERG v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. June 1, 1926.)

No. 236.

1. Internal revenue ⬅═➡7(18)—If profits from criminal commerce constitute income, taxable portion thereof must be reached by deducting expenses of carrying on business (Tax Law 1921, § 214 [Comp. St. Ann. Supp. 1923, § 6336⅓g]).

If profits of criminal commerce constitute income, net or taxable portion thereof must be reached by deducting ordinary and necessary expenses paid or incurred during taxable year in carrying on business, in view of Tax Law, 1921, § 214 (Comp. St. Ann. Supp. 1923, § 6336⅓g).

2. Internal revenue ⬅═➡7(15), 39, 40—Profits from sale of liquor in violation of law held taxable, and concealment of facts thereof punishable (Tax Law 1921, §§ 213, 253 ·[Comp. St. Ann. Supp. 1923, §§ 6336⅓ff, 6336⅓v]; National Prohibition Act [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.]).

Under Tax Law 1921, § 213 (Comp. St. Ann. Supp. 1923, § 6336⅓ff), defining gross income, profits from the sale of liquor in violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) were taxable, and concealment of facts thereof was punishable, under Tax Law 1921, § 253 (Comp. St. Ann. Supp. 1923, § 6336⅓v).

3. Perjury ⬅═➡1.

Crime of perjury in affidavit is complete, when oath is taken with necessary intent, and it is immaterial and irrelevant that false affidavit is never used.

4. Criminal law ⬅═➡984—Sentence for perjury under Criminal Code, and also under Income Tax Law, for making false income tax return, held proper, as being separate crimes (Criminal Code, § 125, Comp. St. § 10295; Tax Law 1921, § 253, Comp. St. Ann. Supp. 1923, § 6336⅓v).

Sentence on count for conspiracy, under Criminal Code, § 125 (Comp. St. § 10295), and also under Income Tax Law 1921, § 253 (Comp. St. Ann. Supp. 1923, § 6336⅓v), for making false income tax return, held proper, as being separate and distinct crimes.

5. Criminal law ⬅═➡338(7)—Admitting, in prosecution for making false income tax return, photostat of account book not showing income or gain, but suggesting that bribes had been paid to prohibition officials, held reversible error.

In prosecution for making false income tax return, omitting profits from illegal sale of liquor, admitting in evidence a photostat of pages of memorandum book found in defendant's office, not in defendant's handwriting, and which, although not showing any income or gains, contained entries suggesting bribery of prohibition or revenue officials, held reversible error.

6. Indictment and Information ⬅═➡131.

Joinder of counts for misdemeanors with counts for felonies is permitted.

In Error to the District Court of the United States for the Southern District of New York.

Charles J. Steinberg was convicted of filing false and fraudulent income tax return and of perjury, and he brings error. Reversed.

The indictment in six counts alleged:

Count 1: That Steinberg did willfully, etc., refuse to pay income tax due by him on March 15, 1921.

Count 2: That he did the same thing on March 15, 1922.

Count 3: That on March 15, 1921, Steinberg unlawfully, willfully, etc., "did attempt to defeat and evade" the income tax then due by him, and that such attempt to defeat and evade the same was wrought "by means of the said incorrect, false, and fraudulent income tax return for the calendar year 1920," which, as the count sets forth at length, Steinberg prepared and filed.

Count 4 asserts that Steinberg on March 15, 1922, was an individual required to pay an income tax, and that he did file at that time "a false and fraudulent income tax return for the calendar year 1921." The count then charges the method of its falsity and fraudulence in great detail, and concludes that "by means of the said inaccurate, false, and fraudulent income tax return for the calendar year 1921" Steinberg attempted "to de-

feat and evade the income tax" imposed by law.

Counts 5 and 6 are for perjury under Criminal Code, § 125 (Comp. St. § 10295); count 5 for having sworn to the income tax return for 1920, and count 6 for having done the same thing as to the return for 1921, each return being the same referred to in counts 3 and 4, respectively.

Thus counts 1, 3, and 5 rest upon the failure of Steinberg to state, in his sworn income tax return for the year 1920, the truth regarding his income for that year, and counts 2, 4, and 6 similarly rest upon his failure to do the same thing with regard to his income for 1921.

At the opening of trial the court sustained demurrers to counts 1 and 2, and then proceeded to "sever" the indictment by declining to take up for trial counts 3 and 5. Steinberg was then tried upon counts 4 and 6, and the evidence shows that his wrongdoing was said to consist in having during the year 1921 obtained profits or gains from the sale of liquor in violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), and then returning as his sole income his salary as an officer of a certain corporation. That salary was about $10,000; but the fourth count charged that "in truth and in fact the net income [of Steinberg] for the calendar year 1921, was a certain sum, to wit, the sum of $760,635.43," and further charged, in substance, that by failing to return this income, and returning the smaller sum, Steinberg had attempted to evade the payment of income tax upon the unreturned residue; i. e., the sum of $490,648.61.

This count (4) rests upon section 253 of the Tax Law of 1921 (42 Stat. 268 [Comp. St. Ann. Supp. 1923, § 6336⅛v]), which provides:

"Any individual * * * who willfully refuses * * * to make such return * * * or who willfully attempts in any manner to defeat or evade the tax imposed by this title, shall be guilty of a misdemeanor and shall be fined not more than $10,000 or imprisoned for not more than one year, or both, together with the costs of prosecution."

The return alluded to is provided for by section 223 of the statute (42 Stat. 250 [Comp. St. Ann. Supp. 1923, § 6336⅛kk]), which declares that individuals (such as Steinberg) "shall each make under oath a return stating specifically the items of his gross income and the deductions and credits allowed under this title."

Criminal Code, § 125, declares:

"Whoever, having taken an oath * * * in any case in which a law of the United States authorizes an oath to be administered * * * that any * * * declaration, deposition, or certificate by him subscribed is true, shall willfully and contrary to such oath state or subscribe any material matter which he does not believe to be true, is guilty of perjury, and shall be fined not more than $2,000 and imprisoned not more than five years."

This offense, under section 335 (Comp. St. § 10509), is a felony.

Plaintiff in error was convicted on both counts, and sentenced on the fourth count to one year's imprisonment and a fine of $10,000, and upon the sixth count was sentenced to imprisonment for four years, the same to begin at the expiration of the said sentence for one year. Thereupon this writ was taken.

Robert D. Elder and Otho S. Bowling, both of New York City, for plaintiff in error.

Emory R. Buckner, U. S. Atty., of New York City (David P. Siegel, Ben Herzberg, and William D. Whitney, Asst. U. S. Attys., all of New York City, of counsel), for the United States.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Of the evidence herein it is enough to say that there was testimony that Steinberg had said that during 1921 he did acquire more money by dealing in illicit liquor than the amount which he reported as his income for that year; but there was no evidence sufficient to go to the jury tending to show that he had received any particular or specified number of dollars as such gains. As for the charge that during the year 1921 his "net income * * * was a certain amount, to wit, the sum of $760,635.43," had the indictment been a complaint for that sum, plaintiff ought to have been nonsuited.

For discussion of the legal point to be next stated, we shall assume that the foregoing was not a variance, and that, the amount (if material) having been laid with a videlicet, proof of any substantial excess over his reported income was sufficient, although the practice of exciting, if not inflaming, jurymen by parading visions of money enormously in excess of anything capable of legal proof cannot be approved. Juries are not ordinarily acquainted with the technical virtues of "to wit."

[1] The legal point is that such unlawful gains as the evidence tended to show Steinberg receiving are not "income" within the meaning of the act of 1921. That the winnings of a professional gambler, the loot of a burglar, the bribes of a dishonest official, the wages of a prostitute, or the profits of any criminal commerce should not be regarded as income, but should for reasons of public policy be regarded as beneath the contempt of the law, is a proposition not without attraction.

If they constitute income within the meaning of the law, it must follow that, in the language of section 214 of the act (Comp. St. Ann. Supp. 1923, § 6336⅛g), the "net" or taxable portion thereof must be reached by deducting "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business"; wherefore whoever for profit maintains a saloon, brothel, or "fence" would have good right to claim as lawful deductions those bribes for "protection" which are a notorious part of the profitable exercise of such vocations. The moral degradation, arising from endeavor by law to collect a necessarily lawful tax out of occupations by equal necessity unlawful, corrupting, and immoral, may well give one pause.

It is true that a distinction may be drawn between the profits of an embezzlement, a robbery, or a burglary (Rau v. United States, 260 F. 136, 171 C. C. A. 167), and those of sales of liquor, or plumes from birds of paradise, both of which are at present under rather similar bans; but there remains a long list of unlawful and profitable occupations in which the proprietor has that legal title to his illegal profits which the thief has not.

But these considerations of civic morals, however potent they should be in the Legislature or with prosecuting officers, who are required to choose and not abuse their weapons against crime, the courts are bound to administer the law as it is found, regardless of considerations of morals, policy, or taste, suitable for the legislative or executive branches. Our duty and our only power is to ascertain what the Legislature means by what it has said, and then enforce what was said.

It is unfortunate that, even in briefs and at bar the phrase "income tax" is continually used as though, under a statute imposing a tax even called by that name, nothing but what lexicographers mean by the word can be taxed. This is an assumption fundamentally erroneous, for it disregards the legislative power of definition.

[2] If the state has authority to tax, regulate, or prohibit something described in ordinary language, and not by some term of technical art, the same authority may define—i. e., delimit or extend—the meaning of that which is to be taxed or regulated. Of this the allsufficient instance at present is the phrase "intoxicating liquors," the key words of the Eighteenth Constitutional Amendment. The power of Congress to define or extend (it makes no difference which) the meaning of that phrase, so as to cover beverages confessedly not intoxicating, is too well known to require comment. If Congress can lawfully make and enforce a definition which is an admitted falsehood, as it now does, it can assuredly extend the meaning of the word "income" to cover items beyond the definition of any dictionary.

This has been done by section 213 (42 Stat. 238 [Comp. St. Ann. Supp. 1923, § 6338⅛ff]), which declares that "gross income" shall include "gains, profits and income derived from * * * professions, vocations, trades, businesses, commerce or sales * * * or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

On the face of this statute, which in defining "gross income" extends the phrase to cover "gains and profits," as contradistinguished from income, we have no doubt that Congress meant to levy a contribution upon every species of gain, no matter how immoral or vicious the method of acquiring the same might be.

That a given sinner or criminal must, in the pursuit of his or her prohibited vocation, break many laws to obtain the wherewithal to satisfy the taxing law, must be regarded as immaterial, for the whole matter is covered by one remark of Holmes, J., in United States v. Stafoff, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358: "*Of course* Congress *may tax what it also forbids.*" This is compendious enough, and was said about liquor; and equally is it of course that, if the Legislature can tax the liquor which it forbids, it can also tax the gains made by dealing in that which is forbidden. We are not concerned with how these singular results are to be obtained; for it is further of course that he who makes unlawful gains cannot lawfully be required to divulge how he made them. This difficulty is so obvious that it must have been considered, even by the lawmakers.

It hardly needs mention that the record before us, common knowledge of prosecuting methods, and the comment of the court

in sentencing this man clearly show that Steinberg was indicted, not to enforce a revenue law, nor penalize him for failing to comply with one, but to punish severely for dealing *largely* in liquor. As we.pointed out in Vanatta v. United States, 289 F. 424, the prohibition statute makes no difference between the sale, possession, or transportation of a bottle of liquor, and the same acts in relation to a shipload; wherefore, as Congress has furnished weapons appropriate for frontal attack only against small fry, endeavor is made to net the larger fish in the meshes of revenue, customs, and tax laws, with the ever-useful conspiracy statute in reserve for a plurality of wrongdoers. The question is not whether this is wise or politic, fair or in good taste, but whether it can legally be done. We think it can under the language of the statutes, and know that similar things have been done for generations.

In Harford v. United States, 8 Cranch, 109, 3 L. Ed. 504, it was held proper to punish a man for not procuring a permit to bring into the country what the embargo prohibited him from bringing in at all.

Marks v. United States, 196 F. 476, 116 C. C. A. 250, is one of many reported instances of indictments for manufacturing smoking opium without license and bond, long after all such opium was absolutely forbidden.

The so-called Harrison Act (Comp. St. §§ 6287g–6287q), upheld in United States v. Doremus, 249 U. S. 86, 39 S. Ct. 214, 63 L. Ed. 493, though now doubted in United States v. Daugherty, 269 U. S. 360, 46 S. Ct. 156, 70 L. Ed. 309, furnishes a perfect example of deliberate legislative invention of a pretended revenue law for the purpose of enforcing moral ideas. This is going much further than attempting to use old statutes for the indirect invigoration of new ones. The action of Congress after United States v. Yuginovich, 256 U. S. 450, 41 S. Ct. 551, 65 L. Ed. 1043, and the treatment thereof in Stafoff v. United States, supra, is illuminating as to legislative leanings and judicial treatment thereof.

Thus we hold that the unknown increment above the sum reported for 1921 as Steinberg's income was taxable, and he was punishable for concealing the facts under section 253 of the statute. As the result of reargument on the point, we are compelled to reject one proposition that prevailed originally, viz. that the Income Tax Act of 1921 by section 253 has, so far as indictments for perjury in tax returns under the statute are concerned, repealed section 125, Criminal Code.

[3] We overlooked, and have been reminded of, the rule that the crime of perjury in an affidavit is complete the moment the oath is taken with the necessary intent. It is immaterial and irrelevant that the false affidavit is never used. 2 Bish. Cr. Law (9th Ed.) §§ 1028 and 1055; The King v. Crossley, 7 T. R. 315; Rex v. White, Mood. & M. 271; The Queen v. Vreones, [1891] 1 Q. B. 360; Commonwealth v. Carel, 105 Mass. 582. And cf. United States v. Rhodes (C. C.) 30 F. 431; Berry v. United States, 259 F. 203, 170 C. C. A. 271. It is quite impossible to imagine how one who had taken a false oath to a tax return could by means of the same attempt to defeat or evade the tax, without using—i. e., tendering—said return to the Treasury.

[4] It follows that one crime is complete when the oath is taken, which crime grows out of the oath, and another is complete when the false instrument is used for the prohibited purpose, and this crime grows out of the use. Therefore there may be two crimes committed, within such cases as Gavieres v. United States, 220 U. S. 338, 31 S. Ct. 421, 55 L. Ed. 489, and Morgan v. Devine, 237 U. S. 632, 35 S. Ct. 712, 59 L. Ed. 1153, and there may have been two such technically separate crimes in this instance. The same result was reached in Levin v. United States (C. C. A.) 5 F.(2d) 598. Cf. Hammer v. United States (C. C. A.) 6 F.(2d) 786.

It follows that the court below could sentence in both counts. Whether considering the obvious real purpose of the prosecution, and the indirect, if not pretended, nature of the charge, it was fair and right to sentence on both, is irrelevant, and it cannot be assigned for error. We are, however, of opinion that, in the course of trial, evidence was wrongfully admitted prejudicial to the accused.

[5] The fundamental object of the prosecution was to show that Steinberg during 1921 received income—i. e., made gains—from liquor sales. Presumably to that end there was admitted in evidence a photostat of some or all (we cannot be sure which) of the pages of an account or memorandum book, found by a visitor to Steinberg's office during the latter's absence, behind a row of books standing in a bookcase. The original book is not in evidence; it is not in Steinberg's handwriting, and the contents of the photostat pages, plus the comment of the man who abstracted the original and the man who examined the copies, do not in our judgment furnish evidence tending to prove that Steinberg during the year in question received any income or gains. But the book was most inju-

rious, because (if for no other reason) some entries suggested that bribes had been paid to prohibition or "revenue" officials. No legal question will be served by dwelling on this document (Exhibit 9); under the circumstances, we think it was serious error to admit it, because it was not probative and was inflammatory.

[6] The only other point on which we now express opinion is that the joinder of counts for misdemeanors with counts for felonies is now permitted; the objection to the practice because of the differing *grades* of crime is antiquated. We agree with Phillips v. United States (C. C. A.) 264 F. 657.

Judgment reversed.

MANTON, Circuit Judge (concurring). I concur in the reversal of the judgment of conviction below for the several errors pointed out in the prevailing opinion. But I also think that the judgment should be reversed, with directions to dismiss the indictment, because no breach of the perjury statute is established. The income or gains as to which it is said the plaintiff in error failed to report, and therefore perjured himself, came from the sale of diverted whisky obtained by the Cardo Company, and sales of diverted alcohol obtained by the Reliance Company, and fees for bribing enforcement officials. If he had returns from any or all of these sources, was it gains, profit, or income within the taxing statute? Section 213 of the Revenue Act of 1921 (Comp. St. Ann. Supp. 1923, § 6336⅓ff) provides for taxing gains, profits, and income derived from any source received. Income, within the meaning of the act, "includes gains, profits, and income derived from salaries, wages, or compensation for personal service' * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." It means "the gain derived from capital, from labor, or from both combined." Eisner v. Macomber, 40 S. Ct. 189, 252 U. S. 189, 64 L. Ed. 521, 9 A. L. R. 1570. Did Congress intend anything other than legitimate labor, as opposed to criminal effort in labor, in imposing a tax from which it was to secure revenue to pay the obligations of the government? No property right exists in whisky that might be termed capital. Title

2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m). Reasonable doubt as to what constitutes income must be resolved against the government. United States v. Merriam, 44 S. Ct. 69, 263 U. S. 179, 68 L. Ed. 240, 29 A. L. R. 1547.

The law requires a return under oath by the taxpayer. Section 223, 42 Stat. 250 (Comp. St. Ann. Supp. 1923, § 6336⅓kk). The taxpayer must keep a record, and render under oath his statement and return and comply with such regulations as the Commissioner, with the approval of the Secretary of the Treasury, may from time to time prescribe. Act 1921, § 1300, 42 Stat. 308 (Comp. St. Ann. Supp. 1923, § 6371⅘b). The Commissioner may examine under oath any person rendering a return. Act 1918, § 1305, 40 Stat. 1142 (Comp. St. Ann. Supp. 1919, § 6371½e). In the case of criminal gains, a taxpayer may refuse to incriminate himself, and the government is powerless in securing the detailed information of his return; for the Fifth Amendment of the Constitution means' that a person shall not be compelled, when acting as a witness in any investigation, to give testimony that might tend to show that he had committed a crime. Counselman v. Hitchcock, 12 S. Ct. 195, 142 U. S. 547, 39 L. Ed. 1110. The protection of the Fifth Amendment is not confined to criminal causes, but extends to any investigation by an administrative officer. Arndstein v. McCarthy, 41 S. Ct. 26, 254 U. S. 71, 65 L. Ed. 138; Interstate Commerce Commission v. Brimson, 14 S. Ct. 1125, 154 U. S. 447, 38 L. Ed. 1047; Internal Revenue Agent v. Sullivan (D. C.) 287 F. 138. It is not possible that Congress intended to grant the right of examining the sources from which the income came, so as to make an investigation regarding it—with knowledge that the taxpayer would be justified under the Fifth Amendment in refusing to give testimony at such investigation because what he might say would tend to incriminate him. Nor could Congress expect him to keep a record, so that he might make returns, and which record might in time be used to incriminate him. Criminal practices should always be punished and immunity should not be granted to the criminal in return for the government obtaining a share of his profits in criminal operations through the medium of income tax payments. If the recipient of this kind of income is obliged to make known its amount and the source, when it is received in sufficient sums to be beyond the exempt minimum, he is compelled to state under oath information that he is not obliged to give, if

he chooses to exercise his right of protection of the Fifth Amendment.

It is also interesting to note that any collector, deputy collector, or employee of the United States may not divulge or make known in any manner whatever the operation, the style of work, or the property of the manufacturer or producer visited by him in the discharge of his official duties, or the amount or sources of income, profits, losses, or expenditures of any kind set forth or discussed in the income return, and for thus offending the government employee is punished by a fine or imprisonment. Rev. Stat. § 3167; Revenue Act 1921, § 1311; 42 Stat. 311, 313 (Comp. St. Ann. Supp. 1923, § 5887). By this Congress intended to protect the taxpayer in his business, so that his secrets of business might not be divulged. But who would be served if this protection is accorded to the bootlegger or highwayman?

Again, assuming that he was entitled to deduction for ordinary and necessary expenses as provided in section 214 of the Act of 1921 (42 Stat. 239; Comp. St. Ann. Supp. 1923, § 6336⅛g), is it possible that the government is to make allowances for expenses and loss sustained in this illegitimate trade? Assuming that bribery was a means of carrying on the trade, is the government to make allowances for bribing its officials? And, if the business flourishes, is the government to share in his prosperity? It is hard to conceive of Congress ever having had in mind that the government be paid a part of the income, gains, or profits derived from successfully carrying on this crime, or entering into a combination with the person engaged in this unlawful business to ascertain how and to what extent he shall be taxed. The Criminal Code provides punishment for those who violate the Volstead Act and its various provisions, and, if severer punishment should be inflicted, it is a matter for Congress to legislate. It is incredible to believe that it was intended that a bootlegger be dignified as a taxpayer for his illegal profit, so that the government may accept his money for governmental purposes, as it accepts the money of the honest merchant taxpayer.

The courts of Canada have considered the question under its income tax law, and have held that its Parliament never intended to levy income tax on the proceeds of crime or gain derived from the business which cannot be carried on without violating its criminal law. They have pointed out that such a business should be strictly suppressed, and that it would be strange, indeed, if, under such a statute, the crown in right could levy a tax upon the proceeds of a business which its provincial Legislature in the exercise of its constitutional powers has prohibited within the province. Smith v. Minister of Finance, [1925] 2 Dom. Law Rep. 1137. We have said that an embezzler's moneys are not taxable under the Income Tax Act. Rau v. United States, 260 F. 136, 171 C. C. A. 167.

In Emmich v. United States (C. C. A.) 298 F. 5, an embezzler was convicted, and in Levin v. United States (C. C. A.) 5 F. (2d) 598, a bootlegger was convicted, of making false returns by evading the proper income tax upon their respective incomes. In neither case does it appear that the question presented here was considered. Therefore I conclude that the reversal should also order the dismissal of the indictment.