# ALEXANDRIA GRAVEL CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

## No. 8660.

Circuit Court of Appeals, Fifth Circuit.

March 25, 1938.

HOLMES, Circuit Judge, dissenting.

———◇———

J. M. Shevnin, of Alexandria, La., for petitioner.

Lucius A. Buck and Sewall Key, Sp. Assts. to Atty. Gen., James W. Morris, Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bur. Int. Rev., and Frank M. Thompson, Spl. Atty., Bur. Int. Rev., both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

In redetermining the income tax of Alexandria Gravel Company for fiscal years ending in 1931 and 1932, commissions paid to a salesman who was a State Senator on sales of sand and gravel to the State Highway Commission of Louisiana, deducted as ordinary and necessary expenses of business, were disallowed by the Board of Tax Appeals.

The evidence comes from a single witness, the president of the taxpayer. On direct examination he testified in substance that his company had been in the sand and gravel business for about four years, selling to the State Highway Commission, to contractors for the building of roads, and to others; that he himself looked after the sales and sold to the Highway Commission until his health got bad. In 1930, after the depression set in, he employed separately and about three months apart two old acquaintances named Dore and Nugent to sell on a commission of 10 per cent., they to pay their hotel bills, automobile, and other expenses. Dore was a lawyer, and a member of the State Senate, and is now a judge. He asked for employment, saying that his law practice was not flourishing. Nugent had been a sawyer, and was also in need of employment. There were other salesmen working on the same terms. These terms were the customary and usual ones then and since. The salesmen received their commissions only after the sand and gravel were delivered and settled for. Dore and Nugent, part of the time singly but later in a partnership between them, sold both to the Highway Department and to contractors, probably a little more to the latter than to the former. The sales to the Highway Department were made on competitive bids, the company fixing its price. Nothing was added because of the commissions. Each transaction fully appeared on the company's books which were in court. Dore individually was paid commissions during the first year amounting to $4,284.53, and Nugent $924.80, and their firm $153.18. During the second year $962.43 was paid Dore, $2,933.27 was paid Nugent, and the firm was paid $2,960.86. On cross-examination the witness stated that both Dore and Nugent sold to the Highway Department, but the other salesmen did not, during these years; that the Department advertised for bids and the lowest bidder got the contract, taking into consideration any difference in freight. Dore visited the Highway Department once a week, and would get warrants mailed out promptly. Dore had no previous experience, but was a good lawyer and witness thought had intelligence enough to be a good salesman, that he had good personality and contacts, and was a good mixer. Witness admitted that he knew Dore was friendly with the administration. There was no testimony that Dore agreed to use any personal or political influence in dealing with the Highway

Department or contractors, or that he ever attempted to.

The Board considered the 10 per cent. commission paid to the salesmen to be a necessary and ordinary expense of business, and allowed a deduction for all that was paid to Nugent, and announced that it would have allowed what was paid Dore on sales to the contractors if the evidence had made that amount clear. But it was held that no allowance could be made of anything paid to Dore or to the firm of Dore and Nugent because the contract with Dore was one to use personal influence with the State Highway Department, was void and unenforceable as being against public policy, and commissions arising from sales to the Department made by Dore or his firm could not be deducted; and since the amount of those arising from sales to contractors had not been shown, nothing paid to Dore or his firm could be allowed.

 The revenue laws of the United States are not over-squeamish. By the broad definition of gross income, income arising from an illegal business is taxed even though the illegality be one declared by the Constitution itself. United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L. Ed. 1037, 51 A.L.R. 1020. The provisions of the statute fixing the deductions to be regarded in arriving at the net income which alone is taxed, 26 U.S.C.A. § 23, are as broad and unqualified as those defining the taxable gross income. Ordinary and necessary expenses of an illegal business would therefore seem to be deductible if they would have been had the business not been prohibited. Such was the view expressed in Steinberg v. United States, 2 Cir., 14 F.2d 564. But it was intimated in Sullivan's Case that the expense of bribery, which would not be necessary or ordinary in a lawful business, would probably not be allowable. So, also, a corrupt expenditure to secure public contracts may be assumed, as was held by the Board, to be unallowable in any business, lawful or unlawful. But we find no evidence that such a contract was made. There was no agreement by Dore to exert any personal influence to secure contracts, nor is it shown that he ever did so. This case therein differs from Oscanyon v. Arms Co., 103 U.S. 261, 26 L.Ed. 539. There is not even any evidence that he had or claimed to have any influence with the Highway Commission. The admission on cross-examination that Dore was known to be friendly with the administration does not establish a total disqualification of Dore to deal with the Highway Commission. The taxpayer was not required to use only unfriendly salesmen. The contracts were all let on competitive bids. There was really small opportunity for the use of influence, if possessed. The expediting of the issuance of the warrants was only the collection of what was already due, and could not prejudice the public; and that is the only unusual activity of Dore that is mentioned. No statute of Louisiana is found prohibiting members of its Legislature from dealing with administrative bodies. We see nothing that would prevent Dore or his firm from recovering these commissions if they were suing the taxpayer for them, and by consequence no cause to deny the taxpayer who has paid them a deduction on the ground put forward by the Board of Tax Appeals.

The judgment is reversed for further proceedings consistent herewith.

HOLMES, Circuit Judge (dissenting).

I think there was substantial evidence to support the finding of the Board of Tax Appeals that these commissions on sales of gravel were not ordinary and necessary expenses of the business within the meaning of Sections 23(a) of the Revenue Acts of 1928 and 1932, 26 U.S.C.A. § 23 and note. Moreover, the conclusion of the Board that payment of such commissions to a state officer was contrary to public policy and not an allowable deduction upon the income tax returns of petitioner was a rational one and should not be disturbed by this court. Oscanyon v. Arms Co., 103 U.S. 261, 26 L.Ed. 539. See, also, Easton Tractor & Equipment Co., 35 B.T.A. 189, and authorities cited therein.

With deference, I think the decision of the Board should be affirmed. There is no analogy between allowing this deduction and taxing the net income of an illegal enterprise. Whether crime shall be exempt from income tax is a matter of public policy for Congress to determine; but this petitioner was engaged in a legitimate business and is charged with no crime. It is said that the gravel was sold upon competitive bids. This fact would seem to support, rather than refute, the

inference of the Board that payment of the commission in question was unnecessary and extraordinary.

This court may differ from the Board, but should not substitute its judgment for a fair and reasonable conclusion of fact which the Board has reached upon competent evidence. The effect of the opinion of the court is to say that, upon the evidence in this record, a reasonable man could not fairly conclude that the payment of these commissions was extraordinary and unnecessary. I cannot go that far with the majority.