### UNITED STATES *v.* CHOUTEAU.

1. In an action by the United States upon a bond executed by A., a distiller, and his sureties, the breaches of the condition assigned in the declaration or complaint were, first, that by omitting to make certain entries in a book which he, by sect. 3303, Rev. Stat., was required to keep, he was enabled to defraud, and did defraud, the United States of the tax imposed by law upon the spirits produced at his distillery; and, second, that in violation of sect. 3296 he had removed spirits produced at his distillery to a place other than the distillery warehouse, without the tax thereon having been first paid. To the first assignment the defendants answered by denying its allegations, and averring that whatever fraud was committed was effected through other means than those charged. To the second they answered, that before the suit was brought two bills of indictment, for the same removals of spirits now complained of, were found against A., one containing counts upon said section and upon sections 3281 and 5440, and that upon the recommendation of the Attorney-General and the advice of the Secretary of the Treasury, the Commissioner of Internal Revenue accepted from him a specified sum, in a compromise, satisfaction, and settlement of the indictments, which were thereupon dismissed and abandoned by the United States. Upon a demurrer to the answer, — *Held,* that the answer was a bar to the action.
2. *Quære,* whether the only mode for the recovery of the penalty prescribed by sect. 3296 is not by indictment.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

This is an action upon a bond of a distiller, against the principal and sureties, and is founded upon sects. 3303 and 3296 of the Revised Statutes. The bond is in the penal sum of $25,000, and, after reciting that the principal, Joseph G. Chouteau, intends, after the first day of May, 1874, to be

engaged in the business of a distiller within the first collection district of Missouri, to wit, at Grand Avenue and Main Street, in the city of St. Louis, in that State, it is conditioned, among other things, that he "shall in all respects faithfully comply with all the provisions of law in relation to the duties and business of distillers, and shall pay all penalties incurred or fines imposed on him for a violation of any of the said provisions."

Sect. 3303 is as follows: —

"Every person who makes or distils spirits, or owns any still, boiler, or other vessel used for the purpose of distilling spirits, or who has such still, boiler, or other vessel so used under his superintendence, either as agent or owner, or who uses any such still, boiler, or other vessel, shall from day to day make, or cause to be made, in a book or books, to be kept by him in such form as the Commissioner of Internal Revenue may prescribe, a true and exact entry of the kind of materials, and the quantity in pounds, bushels, or gallons, purchased by him for the production of spirits, from whom and when purchased, and by what conveyance delivered at said distillery, the amount paid therefor, the kind and quantity of fuel purchased for use in the distillery, and from whom purchased, the amount paid for ice or water for use in the distillery, the repairs placed on said distillery or distilling-apparatus, the cost thereof, and by whom and when made, and of the name and residence of each person employed in or about the distillery, and in what capacity employed. And in another book he shall make like entry of the quantity of grain or other material used for the production of spirits, the time of day when any yeast or other composition is put into any mash or beer for the purpose of exciting fermentation, the quantity of mash in each tub, designating the same by the number of the tub, the number of dry inches, that is to say, the number of inches between the top of each tub and the surface of the mash or beer therein at the time of yeasting, the gravity and temperature of the beer at the time of yeasting, and on every day thereafter its quantity, gravity, and temperature at the hour of twelve meridian; also, of the time when any fermenting-tub is emptied of ripe mash or beer, the number of gallons of spirits distilled, the number of gallons placed in the warehouse, and the proof thereof, the number of gallons sold or removed, with the proof thereof, and the name, place of business, and residence of the person to whom sold."

Sect. 3296 is as follows : —

"Whenever any person removes, or aids or abets in the removal of, any distilled spirits on which the tax has not been paid, to a place other than the distillery warehouse provided by law, or conceals, or aids in the concealment of, any spirits so removed, or removes, or aids or abets in the removal of, any distilled spirits from any distillery warehouse, or other warehouse for distilled spirits, authorized by law, in any manner other than is provided by law, or conceals, or aids in the concealment of, any spirits so removed, he shall be liable to a penalty of double the tax imposed on such distilled spirits so removed or concealed, and shall be fined not less than two hundred dollars, nor more than five thousand dollars, and imprisoned not less than three months, nor more than three years."

The complaint in the action, or petition as it is termed, contains eighty-four assignments of breaches of the conditions of the bond, forty-two of which, constituting the odd numbers, are founded upon sect. 3303, and forty-two, constituting the even numbers, are founded upon sect. 3296. The difference in the breaches assigned in each class is in respect to the day on which the act constituting the breach is alleged to have been done, commencing on the second day of May, and ending on the fifteenth day of August, 1874. The same breach of duty is charged to have been committed on forty-two different days.

The breach stated in each of the assignments designated by odd numbers is, that the distiller omitted to make, in a book he was required by law to keep, a true and exact entry of the kind and quantity of materials used by him in the production of distilled spirits ; that he produced from the grain used a large quantity of spirits, and "that by means of the said omission to make said entry in said book as aforesaid" he " was enabled to defraud and did defraud the plaintiff out of the internal revenue tax then and there imposed by law on spirits, whereby the plaintiff is damaged in the sum of $2,100."

To this breach in the various assignments the defendants answer, and deny that by reason of the alleged omission of the distiller to make proper entries in the distiller's book men-

tioned he was enabled to defraud and did defraud the United States of the tax on distilled spirits produced at his distillery, or any part of the tax; and state that, prior to any of the acts complained of, the distiller combined, confederated, and conspired with certain designated revenue officers and agents, and other distillers and rectifiers, to defraud the United States of the tax on distilled spirits produced at various distilleries within the first collection district of Missouri; that, in furtherance of this conspiracy and to accomplish its purpose, the parties concerned in it committed various violations of the revenue laws, and among other things they removed and aided in the removal of distilled spirits from the distilleries without having first paid the tax on them; they reused upon packages paid and warehouse stamps which had been previously used; they gave and received bribes, and made and connived at making false and fraudulent reports to the collector of internal revenue within the district of the quantities of spirits produced upon which taxes had become due; that the distiller, by reason of his participation in this conspiracy, was enabled, if at all, to defraud the United States of the tax on distilled spirits produced at his distillery within the period covered by his bond; that the internal revenue officers charged with the execution and enforcement of the internal revenue laws had no occasion to have recourse to the distiller's book and the store-keeper's record kept at the distillery, and did not have recourse to them, or examine them to obtain information touching the quantities of grain used and the number of gallons produced at the distillery; and that it was by reason of the organization and execution of this conspiracy, irrespective of the omission to make the entries mentioned, that the conspirators were enabled to defraud the United States of the tax on spirits produced at the distillery.

The breach stated in each of the assignments designated by even numbers is, that the distiller removed spirits produced at his distillery to a place other than the distillery warehouse, without the internal revenue tax imposed thereon being first paid, thereby incurring a penalty of $2,800, which sum he has not paid.

To this breach in the various assignments the defendants

answer that the United States ought not to maintain its action for the penalty denounced in sect. 3296, for, at the November Term, 1875, in the District Court of the United States for the Eastern District of Missouri, two bills of indictment were found against said Chouteau, the distiller, one of which contained counts founded upon that section, alleging the removal by him, and his aiding and conniving at the removal, of distilled spirits from his distillery to a place unknown, upon which spirits the revenue tax was imposed and had not been paid, the other counts being founded upon sects. 3281 and 5440 of the Revised Statutes; that afterwards, with the advice and consent of the Secretary of the Treasury and upon the recommendation of the Attorney-General, the Commissioner of Internal Revenue accepted from the distiller $1,000 in full satisfaction, compromise, and settlement of the indictment and prosecutions, which were thereupon dismissed and abandoned.

And the defendants further answering, state " that the alleged removals of distilled spirits set forth in the various assignments of breaches now answered are the same removals recited in the said indictment; that all of the said removals of spirits complained of in plaintiff's petition might have been established, if said allegations be true, under the said indictments, either upon those counts based upon sect. 3296, or that count based upon sect. 3281; that all of the evidence which would be necessary to establish, and competent under the various assignments of breaches in plaintiff's petition, would also be competent under and would tend to establish the allegations of said indictments; that the various assignments of breaches in plaintiff's petition relate to the same subject-matter and are based upon the same transaction as the various allegations in said indictments contained, so far as they relate to alleged offences under sects. 3296 and 3281 and 5440, and that at the time when the said indictments were presented to said grand jury, and at the time when the said indictments were considered by said grand jury, all of the facts which would be competent to sustain the allegations of plaintiff's petition were known to, and within the possession of, the representative of the United States."

The United States demurred to the answer. The demurrer was overruled, and judgment entered thereon in favor of the defendants. The case was then removed here by writ of error.

*The Solicitor-General* for the plaintiff in error.

No counsel appeared for the defendants in error.

MR. JUSTICE FIELD, after stating the facts, delivered the opinion of the court.

As seen by the statement of the case, each breach of the condition of the bond in suit, of the class designated by odd numbers, consists in the omission of the distiller to make the required entries in the book provided in sect. 3303. The petition alleges that, by " means of the said omission," the distiller was enabled to defraud and did defraud the United States of the tax imposed by law upon the spirits produced at his distillery. The answer denies this allegation, and avers that whatever fraud was committed upon the United States was effected through other means. The demurrer admits that averment to be true, and the question is thus presented whether a party seeking damages for a specified breach of duty is entitled to judgment in his favor, when admitting on the record that whatever damages he may have sustained resulted from other causes.

The case is not brought for any tax alleged to be due to the United States, which they would be entitled to recover, whatever the cause of its non-payment. In such a case it would be of no consequence whether the cause assigned for the default of the party was the true one or not; the obligation to the government would be the same. Here a specific omission of duty on the part of the distiller is alleged, for which it is sought to charge both him and his sureties on their bond. Their liability is only to the extent of the damages sustained. If none resulted to the United States from the omission stated, none can be recovered either against him or his sureties. The law does not affix any specific penalty for the omission. If, therefore, the allegations of the petition were simply traversed, the government would be compelled to prove, not only the omission complained of, but that by means of

it the tax on the spirits produced was lost, which constitutes the damages alleged. It would not be sufficient to show that by other omissions of duty the government was thus defrauded, for that would be to change the entire ground of the action, the specific gravamen of the complaint.

Now, the demurrer admits that the ground of complaint — the specific breach of duty stated — did not cause the damages charged, but that whatever damages were sustained by the United States were effected by other means. Therefore the action, so far as damages are claimed for the particular omission of duty mentioned, must fail.

It is true that the breaches of duty, which are stated by the defendants in their answer as the means by which the United States were defrauded, are a series of stupendous frauds, for which the guilty parties deserve severe punishment; still they were none the less available as a defence to an action charging to other causes the damages which they produced. It is certainly one way of defending against the charge of a wrongful act for which damages are sought, to show that, notwithstanding the wrong committed, the damages resulted from other causes, however objectionable a pleading might be with averments to that effect instead of a distinct traverse of the allegations of the complaint. If, for example, a party should charge another with inflicting upon his person a wound by which he lost an arm, it would be a good defence to show that the loss resulted from unskilful medical treatment or neglect and not from the wound inflicted. So here, it is enough for the sureties to show that the loss to the government was produced by other means than the particular breach of duty by their principal, of which the government complains. It is of no consequence to them, so far as the present action is concerned, how many other sins of omission or commission he may have committed, if they can show that the particular damage claimed was not the result of the one charged.

As to the breaches of duty in the assignments of the class designated by even numbers, we are of opinion that the compromise with the government pleaded is a complete defence against a recovery of the penalty claimed. Each breach alleged consists in the removal by the distiller of spirits pro-

duced at his distillery to a place other than the distillery warehouse, without first paying the tax imposed thereon. The penalty prescribed for this offence was intended as part punishment for it, and may be enforced, equally as the additional fine and imprisonment, by criminal prosecution. It was not intended in any sense as a substitute for the tax required, or as any abatement of it when recovered. This is evident from the fact that it may be applied to those who have aided or abetted in the removal, whether the distiller or one having no interest in the spirits. So, too, the payment of the tax may be made after the removal, and yet the penalty not be discharged; it could still be imposed upon the offending party.

It may be questioned whether the only mode for a recovery of the penalty is not by indictment; but assuming that it may be recovered in a civil action, the compromise pleaded covers the penalties here claimed. Two indictments have been found against the distiller, one of which contains counts for the specific offences, which constitute the whole ground and cause of the present action. Under the authority of an act of Congress, a compromise with the government was effected, by which a specific sum was paid by him, and received by the government, "in full satisfaction, compromise, and settlement of said indictments and prosecutions," which were accordingly dismissed and abandoned. That compromise necessarily covered the causes or grounds of the prosecutions, and consequently released the party from liability for the offences charged and any further punishment for them. The answer avers that the removals of distilled spirits set forth in the assignment of breaches of the condition of the bond are the same removals recited in the indictments, and that all the evidence necessary to establish the breaches assigned would have been necessary and competent under the indictments. The two proceedings, the civil action and the criminal prosecution, so far as they relate to offences under sect. 3296, are based upon the same transactions.

The question, therefore, is presented whether sureties on a distiller's bond shall be subjected to the penalty attached to the commission of an offence, when the principal has effected

a full and complete compromise with the government, under the sanction of an act of Congress,, of prosecutions based upon the same offence and designed to secure the same penalty.

Admitting that the penalty may be recovered in a civil action, as well as by a criminal prosecution, it is still as a punishment for the infraction of the law. The term " penalty " involves the idea of punishment, and its character is not changed by the mode in which it is inflicted, whether by a civil action or a criminal prosecution. The compromise pleaded must operate for the protection of the distiller against subsequent proceedings as fully as a former conviction or acquittal. He has been punished in the amount paid upon the settlement for the offence with which he was charged, and that should end the present action, according to the principle on which a former acquittal or conviction may be invoked to protect against a second punishment for the same offence. To hold otherwise would be to sacrifice a great principle to the mere form of procedure, and to render settlements with the government delusive and useless.

Whilst there has been no conviction or judgment in the criminal proceedings against the distiller here, the compromise must on principle have the same effect. The government through its appropriate officers has indicated, under the authority of an act of Congress, the punishment with which it will be satisfied. The offending party has responded to the indication and satisfied the government. It would, therefore, be at variance with right and justice to exact in a new form of action the same penalty. For, as it was justly said by this court in *Ex parte Lange*, speaking through Mr. Justice Miller, " If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And, though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offence, or to bring the party within the jurisdiction of more than one court, there has never been any doubt of its entire and complete protection of the party where a second punishment is proposed in the same court, on the

same facts, for the same statutory offence. The principle finds expression in more than one form in the maxims of the common law." 18 Wall. 163, 168.

*Judgment affirmed.*

NOTE. — In *United States* v. *Ulrici,* error to the Circuit Court of the United States for the Eastern District of Missouri, which was submitted at the same time, MR. JUSTICE FIELD delivered the opinion of the court.

This case involves substantially the same questions considered in *United States* v. *Chouteau.* Here the principal on the bond in suit pleaded guilty to the indictments found against him, and was fined $1,000 and imprisoned for one day. The punishment inflicted was for offences which are set forth in the petition in this action as breaches of the condition of the bond. This difference in the two cases does not affect the principle upon which the first was decided. Upon its authority the judgment is

*Affirmed.*