## OLIVER v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. July 6, 1920.)

No. 1745.

1. **Internal revenue ⬤⇒2—Harrison Narcotic Act is constitutional.**
   The Harrison Narcotic Act (Comp. St. §§ 6287g–6287q), forbidding the sale of preparations of opium not for use as a medicine, without having paid the tax therein required, is constitutional.

2. **Indictment and information ⬤⇒111(1)—Indictment need not negative exceptions to Harrison Narcotic Act.**
   Under Harrison Narcotic Act, § 8 (Comp. St. § 6287n), the indictment need not negative the exemptions from the act, so that an indictment for sale of a preparation containing more than the specified minimum of opium, substantially in the language of section 6 (Comp. St. § 6287*l*), was not only sufficient, but was unnecessarily specific in negativing the exception of sale for medicinal purposes by alleging the sale was not as medicine, but for the purpose of evading the act.

3. **Internal revenue ⬤⇒47—Evidence held to warrant submission to jury of question of intent to evade Narcotic Act.**
   In a prosecution for the sale of a preparation containing opium without a license, contrary to Harrison Narcotic Act, § 6 (Comp. St. § 6287*l*), evidence that sales ·were knowingly made to drug addicts *held* sufficient to go to the jury on the question of intent by defendant to evade the provisions of the act.

4. **Internal revenue ⬤⇒47—Charge that Harrison Drug Act was to discourage .trade held not error.**
   In a prosecution for violation of the Harrison Narcotic Act (Comp. St. §§ 6287g–6287q), a charge that the purposes of the act were, first, to obtain a license tax, and incidentally to prevent sales being made to addicts, was not error.

5. **Criminal law ⬤⇒1153(2)—Determination of competency of child witness ·is in trial court's discretion.**
   The determination of the competency of·a child to testify is very largely intrusted to the discretion of the trial court, and its ruling will not be reviewed, in the absence of abuse of discretion.

6. **Witnesses ⬤⇒79(1)—Appearance and manner considered in· determining competency.**
   In determining the competency and intelligence of a witness, the court should take into consideration the general appearance and manner of the witness, as well as statements made by him.

7. **Internal revenue ⬤⇒47—Compromise is bar to prosecution.**
   Under Rev. St. § 3229 (Comp. St. § 5952), a compromise with the consent of the Commissioner·of Internal Revenue before suit, and with the consent of the Secretary of the Treasury, and the Attorney General, after suit, is as complete a discharge from a prosecution for violation of the revenue laws as would be an acquittal by the jury.

8. **Criminal law ⬤⇒304(17)—Consent of officers to compromise by Commissioner is presumed.**
   The duty of securing the consent of the Secretary of the Treasury and the recommendation of the Attorney General to a compromise of a viola-

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion of the internal revenue laws after prosecution is begun devolves upon the Commissioner of Internal Revenue, and not upon accused, and it will be presumed that the Commissioner of Internal Revenue performed that duty before entering into the compromise

**9. Internal revenue ☞47—Receipt of money by Commissioner evidence of compromise.**

In a prosecution for a violation of the Harrison Narcotic Act (Comp. St. §§ 6287g–6287q), the receipt by the Commissioner of Internal Revenue of an amount paid by defendant in alleged satisfaction of a compromise of the prosecution is at least competent evidence from which the jury could infer a compromise which would bar the conviction, so that the exclusion of such receipt from evidence was error.

Waddill, District Judge, dissenting.

In Error to the District Court of the United States for the Southern District of West Virginia, at Bluefield; Charles A. Woods, Judge.

Edward T. Oliver was convicted of violating the Harrison Narcotic Act, and he brings error. Reversed.

William E. Ross and Joseph M. Sanders, both of Bluefield, W. Va. (Sanders & Crockett and A. G. Fox, all of Bluefield, W. Va., on the brief), for plaintiff in error.

J. N. Kenna, Asst. U. S. Atty., of Charleston, W. Va. (Lon H. Kelly, U. S. Atty., of Charleston, W. Va., on the brief), for the United States.

Before PRITCHARD, Circuit Judge, and WADDILL and WATKINS, District Judges.

WATKINS, District Judge. Edward T. Oliver, the plaintiff in error, a druggist at Bluefield, W. Va., was convicted in the District Court of the Southern District of West Virginia upon an indictment charging him in two counts with violation of the Harrison Narcotic Act (Comp. St. §§ 6287g–6287q). Each count charged him with having in his possession and under his control a certain fluid compound, manufacture, derivative, and preparation of opium, commonly called paregoric, which contained two grains of opium in each fluid ounce thereof, and that he feloniously, unlawfully, and in violation of the aforementioned act sold, dispensed, and distributed to the purchasers named in the indictment 16 fluid ounces of said preparation, without having registered under the terms of the act, and without having paid the tax therein required, and that the preparation was sold, not as a medicine, but for the purpose of evading the intentions and provisions of the act.

The crime is charged substantially in the language of the statute. The assignments of error may be grouped and considered under the following general classifications: (1) Constitutionality of the act. (2) Sufficiency of the indictment. (3) Sufficiency of certain evidence. (4) Oral charge of the court. (5) Competency of the testimony of a thirteen year old witness. (6) Evidence as to compromise.

[1] 1. While the constitutionality of the act is questioned, it is conceded that the Supreme Court has settled this question in the cases of United States v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854; United States v. C. T. Doremus, 249

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

U. S. 86, 39 Sup. Ct. 214, 63 L. Ed. 493; W. S. Webb and Jacob Gold-baum v. United States, 249 U. S. 96, 34 Sup. Ct. 217, 63 L. Ed. 497.

[2] 2. The indictment charges an offense under the act, and the demurrer and motion to quash were properly overruled. The first section of the act (Comp. St. § 6287g) makes it unlawful for any person to sell any derivative or compound of opium whatever without registration and without the payment of the special tax provided. Section 6 (Comp. St. § 6287l) does not purport to exempt from the operation of the act the sale of all preparations which do not contain more than two grains of opium to the fluid ounce, but only such preparations of that character as are sold, distributed, given away, dispensed, or possessed as medicine, and not for the purpose of evading the intentions and provisions of the act. So far from being demurrable, the indictment is unnecessarily specific in negativing the exceptions contained in section 6. Section 8 of the act (Comp. St. § 6287n) makes it unnecessary to negative the exemptions, and also places the burden of proof of any such exemptions upon the defendant. The case of Webb & Goldbaum v. U. S., supra, recognizes the right of the government to require persons, who claim the benefit of the exemptions of the act, to comply with the requirements. The charge here is not against the mere possession, for which no registry or payment of tax is required, but is for the sale under conditions prohibited by the statute. The charge, therefore, is radically different from that in the Jin Fuey Moy Case.

[3] 3. There was ample evidence to go to the jury upon the question of whether the drug was sold as a medicine or for the purpose of evading the intentions and purposes of the act. To begin with, there was testimony that the plaintiff in error kept on hand an abnormally large quantity of the drug. Two witnesses testified that they were addicts to the use of drugs containing opium, and that they had purchased these drugs from the plaintiff in error, with more or less frequency; one of the witnesses stating that she had been advised by him to quit the use of paregoric, because it was injurious. The testimony of J. M. Branksy, an employé of the Internal Revenue Department, was to the effect that he purchased from plaintiff in error a pint of paregoric upon the statement that it was to be used by an addict, and subsequently, through Sherman French, obtained another pint upon the representation that it was to be used for like purpose. Plaintiff in error testified in his own behalf, and did not controvert any of this testimony.

[4] 4. The presiding judge, in his remarks to the jury, stated:

"Now, the purposes of the act of Congress are, first, to obtain a license tax for the government as a part of its revenue; incidentally, its purpose is to prevent sales being made to those who are opium addicts, or administering to opium addicts."

In this there was no error. In the Jin Fuey Moy Case, the court said:

"It may be assumed that the statute has a moral end, as well as revenue, in view."

The exception provided for in section 6 was based upon humanitarian grounds. The government being willing to forego its claim for revenue at the demand of suffering humanity furnishes no reason for denying it

the right of a rigid enforcement of the law against those who, by falsely claiming to act under the exemptions provided, would use this pretense as a means to debauch its citizens.

[5] 5. Sherman French was permitted to testify on behalf of the government, though, after being first examined by counsel for the government touching the matter of his competency as a witness, he stated that he was 13 years of age, but that he did not know the nature of an oath. He was thereupon examined by the court, and asked if he knew what he was intended to do when he was sworn to testify the truth, and he replied, "To tell the truth." It was peculiarly within the province and discretion of the court to determine the competency of the witness, and, in the absence of an abuse of discretion, the testimony must be held to be competent.

[6] While it is true that the witness stated that he did not understand the nature of an oath, it is doubtless true that the court concluded that his answer related to his inability to give a definition of an oath in more or less technical terms, rather than to his knowledge and realization of its obligation. In determining the competency, and intelligence of a witness, the court may and should take into consideration the general appearance and manner of the witness, as well as the statements made by him. The general rule is that the question of the competency of children as witnesses rests within the sound discretion of the court, and is to be determined by the trial judge. It does not imply the necessity of defining the meaning of the word "oath." People v. Bernell, 10 Cal. 66; State v. Meyer, 135 Iowa, 507, 113 N. W. 322, 124 Am. St. Rep. 291, and note, 14 Ann. Cas. 1; 1 Wigmore on Evidence, § 505; Greenl. Ev. § 367; Wheeler v. United States, 159 U. S. 523, 16 Sup. Ct. 93, 40 L. Ed. 244; Turner v. American Security Co., 213 U. S. 258, 29 Sup. Ct. 420, 53 L. Ed. 788.

6. At the trial plaintiff in error was introduced as a witness on his own behalf, and he testified, among other things, that after his arraignment before the commissioner, and after he had been held to the grand jury and had given bond for his appearance, he was advised by the representative of the government that his offense could properly be compromised with the Internal Revenue Department, and was also directed to take the matter up with G. C. Holt, who was one of the men connected with the office of the Revenue Department. He stated further that Holt told him that he could make an offer of compromise to the Commissioner of Internal Revenue, inclosing a certified check for the amount of his offer, and that if this offer was refused his money would be returned, and he could then make another offer. He further testified that he accordingly obtained and sent to the Commissioner of Internal Revenue a certified check for $100, dated March 6, 1919, accompanied by a letter in which he made an offer of the said sum as a compromise and settlement of the case. This check was indorsed by the Commissioner of Internal Revenue and made payable to the order of S. A. Hays, Collector of Internal Revenue for the District of West Virginia, and it was stamped "Paid," and across its face, when returned, was also stamped the words:

"This check is in payment of an obligation to the United States and must not (sic?) be paid at par. No protest. S. A. Hays, Collector, Dist. of W. Va."

A receipt was forwarded to the defendant, signed by the said S. A. Hays, Collector, in which receipt, among other things, appeared the following words:

"Form 23, O. in C. for violation of Act of Dec. 17/14, Narcotic Law, $100.00. Received payment Mar. 17, 1919. S. A. Hays, Collector, by Rathbone, Asst."

After admitting the aforesaid evidence for the purpose of making up the record, the court excluded the same, and directed the jury not to consider the evidence, to which ruling the defendant, by counsel, excepted. The exclusion of this evidence was error. Section 3229 of the Revised Statutes (Comp. St. § 5952) provides:

"The Commissioner of Internal Revenue, with the advice and consent of the Secretary of the Treasury, may compromise any civil or criminal case arising under the internal revenue laws instead of commencing suit thereon; and, with the advice and consent of the said Secretary and the recommendation of the Attorney General, he may compromise any such case after a suit thereon has been commenced."

[7, 8] Under this statute a compromise once effected, whether before or after prosecution, is as complete a discharge of the defendant as a verdict of acquittal by a jury. The evidence here shows that the defendant, not only adopted the course provided by statute, but that he acted under the specific advice of a representative of the government. It is true that there was no evidence that he had obtained or attempted to obtain directly from the Secretary of the Treasury his advice and consent, or that he had directly obtained or applied to the Attorney General for his recommendation. The statute does not expressly state how the consent or approval of these officers is to be obtained. It is evidently contemplated, however, that the advice and consent of the Secretary of the Treasury and the recommendation of the Attorney General should be sought and obtained by the Commissioner of Internal Revenue, who himself finally passes upon the matter, and who is the party charged with directly dealing with the defendant, and it is to be presumed that, when he finally accepts an offer of compromise of a defendant, he has previously discharged his duty of communicating with the other officers. To hold otherwise would bring the acts of the officers of the government under inquiry and frequently under a suspicion which ought not to be allowed to arise. It is of the highest importance that citizens, who deal with an officer of the government charged with an official duty, shall have the right to presume, in every instance, in the absence of positive proof to the contrary, that such officer did his duty. 22 R. C. L. pp. 472 to 475; Wilkes v. Dinsman, 7 How. 89, 12 L. Ed. 618; United States v. Crusell, 14 Wall. 1, 20 L. Ed. 821; Keely v. Sanders, 99 U. S. 441, 25 L. Ed. 327; Nofire v. United States, 164 U. S. 657, 17 Sup. Ct. 212, 41 L. Ed. 588; 10 Ency. of U. S. Supreme Court Rep. pp. 421, 422, and cases cited.

[9] The government offered no testimony to contradict or explain the testimony as to a compromise. So far as the evidence went, it tend-

ed to show that the money offered in compromise to the proper officer of the government had been accepted and retained by him, and it should have been submitted to the jury as at least tending to show that a compromise had been effected. In the case of United States v. Chouteau, 102 U. S. 603, 26 L. Ed. 246, the court held that sureties on a distiller's bond could not be subjected to the penalty attached to the commission of an offense, when the principal had effected a full and complete compromise with the government, under the sanction of an act of Congress, of prosecutions based upon the same offense and designed to secure the same penalty. The court said:

"The compromise pleaded must operate for the protection of the distiller against subsequent proceedings as fully as a former conviction or acquittal. He has been punished in the amount paid upon the settlement for the offense with which he was charged, and that should end the present action, according to the principle on which a former acquittal or conviction may be invoked to protect against a second punishment for the same offense. To hold otherwise would be to sacrifice a great principle to the mere form of procedure, and to render settlements with the government delusive and useless."

In the case of Rau v. United States, 260 Fed. 134, 171 C. C. A. 170, the court said:

"The Commissioner of Internal Revenue had the power and authority by virtue of the statute above referred to, and with the advice and consent of the Secretary of the Treasury, to compromise the criminal case as well as the civil case arising under the internal revenue laws. The compromise may have been made before the institution of the criminal proceedings or after. The provision relating to the necessary consent of the Attorney General evidently intends a compromise after the institution of a civil or criminal action. If the defendant, in good faith, made the payment of the tax and penalty for the purpose of compromising the impending action, he is entitled to full protection and the benefits derived therefrom. If the money was accepted with the promise of immunity from further punishment in a criminal proceeding, it would be a complete defense to this indictment. * * * The fact that the money was retained by the United States is some evidence of its acceptance in compromise. We believe that under the facts disclosed in this record, as far as the defendant was permitted to show them, it was required of the court to submit as a question of fact to the jury, under proper instructions, whether or not a compromise was entered into."

The case of Willingham v. United States, 208 Fed. 137, 127 C. C. A. 263, is in accord with the views herein expressed.

Reversed.

WADDILL, District Judge (dissenting). I am unable to concur with my Brethren in this case, as, from my view, the trial court was clearly right in excluding from the consideration of the jury the testimony respecting the proposed settlement of the case by the Commissioner of Internal Revenue. The privilege of compromising revenue cases after indictment, by the Commissioner of Internal Revenue, with the approval of the Attorney General, should be promptly exercised and carried to completion by a defendant who seeks thus to suspend the administration of the criminal laws. It was never intended that this law, thus generously passed in the interest of an accused, should be resorted to for the purpose of having the executive authorities of the government do other than settle or refuse to settle cases, and to allow a defendant

to open correspondence looking to a settlement, and without concluding the same, to interpose his action as a further defense to the prosecution, is entirely subversive of the spirit of the act in question, and would quickly result in endless confusion and conflicts between the courts and the executive branches of the government. A defendant under indictment, seeking to avail himself of this method of meeting a prosecution, is not to so conduct himself as that a law passed in his interest, shall be used to enable him to evade trial of the offense with which he is charged. Every consideration requires of a defendant that any action looking to a compromise of his liabilities should be initiated and completed, so as not to unduly interfere with the prosecution of the case in court.

The anomaly of submitting to the consideration of the jury the question of whether there had, in fact, been a settlement of the liability must, upon reflection, be apparent, as it would be a trial, not of the offense charged in the indictment, but of whether the government had enabled the defendant to meet the prosecution in one of the ways prescribed by law, and would, most probably result in a hung jury, over the question of whether the government had or had not done something that it ought to have done, instead of the defendant doing something that he should have done, to enable him to have the prosecution discontinued. Moreover, the question of what constitutes a settlement is one of law, not of fact, and should be determined by the court, if it is open for consideration at all.