**HANBY v. COMMISSIONER OF INTERNAL REVENUE.**

No. 3491.

Circuit Court of Appeals, Fourth Circuit.
Oct. 3, 1933.

Robert Ruark, of Raleigh, N. C. (Ruark & Ruark, of Raleigh, N. C., on the brief), for petitioner.

J. P. Jackson, Sp. Asst. to Atty. Gen. (Sewall Key and Earl C. Crouter, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and Mason B. Leming, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

A petition was filed by the taxpayer to review a decision of the Board of Tax Appeals affirming the Commissioner's determination of additional income and excess profits taxes for the years 1917, 1918, 1919, 1920, and 1921. The sum of the deficiencies of the taxes in these years, as so approved, is $22,829.-64, to which penalties in the amount of $20,-556.35 have been added. For the year 1917 there was imposed under R. S. § 3176, as amended by section 16 of the Revenue Act of 1916 (39 Stat. 756, 775), a penalty of 50 per cent. of the excess profits tax, for failure to make and file the excess profits return, and also a penalty of 100 per cent. of the income tax, for willfully making a false and fraudulent income tax return; while for each of the other years there was imposed, under section 250 (b) of the Revenue Acts of 1918 and 1921 (40 Stat. 1057; 42 Stat. 227), a penalty of 50 per cent. of the amount of the deficiency, for false and fraudulent understatement, with intent to evade the tax or the amount which should have been paid. Petitioner does not question the amount of the deficiencies assessed, but advances divers reasons why the assessment may not now be imposed upon the following facts as found by the Board.

Petitioner was engaged during the years in question at Wilmington, N. C., in the manufacture and wholesale distribution of candies and soft drinks, under the trade-name of Crescent Candy Company. A false record book was kept, under petitioner's direction, the accounts of the business were deliberately manipulated in order that his taxable gain might be understated, and false returns, based upon these accounts, were filed in due time for each of the years 1917 to 1921. On June 9, 1923, after an examination of petitioner's books, a deficiency letter, with attached statement showing an additional tax and penalty of $63,892.37 for the years 1917, 1918, and 1919, was mailed to petitioner, and as a result petitioner filed amended returns for those years, admitting part of the liability asserted. Conferences were then had in Washington between a representative of the petitioner and representatives of the Bureau of Internal Revenue, and as a consequence of these discussions an additional assessment of taxes and penalties was made by the Commissioner, and additional payments were made by the taxpayer under circumstances to be later more fully described. In the year 1924, a further examination of petitioner's books was had, and a second deficiency letter, showing additional taxes and penalties in the sum of $43,385.99, was mailed to petitioner on October 11, 1924. A jeopardy assessment for this sum followed in November, 1924; and the present proceeding grows out of the respondent's rejection on June 3, 1927, of petitioner's claim for abatement of the full amount of the additional assessment. In the meantime, petitioner was indicted in the United States District Court for the Eastern District of North Carolina for willful attempt to defeat and evade the taxes imposed by law, by filing false and fraudulent amended returns for the years 1917, 1918, and 1919, and also for filing a false and fraudulent original return for 1921. He was tried under this indictment and acquitted of the charges with reference to the amended returns for 1917, 1918, and 1919, but convicted of the charge in relation to his original return for 1921.

Upon these facts, petitioner contends: (1) That the assessment in November, 1924, of taxes and penalties for 1917, 1918, and 1919 was barred by the statute of limitations; (2) that there was a binding settlement and compromise of tax liability for the years 1917, 1918, and 1919; (3) that the acquittal of petitioner on criminal charges in connection with the amended returns for 1917, 1918, and 1919 is res judicata, as to his liability for fraud penalties for those years; and (4) that the indictment and conviction of petitioner on the charge of filing a false and fraudulent original return for 1921 operates as a bar, under the doctrine of double jeopardy, to the further imposition of the fraud penalty for that year.

There is also a preliminary procedural question, petitioner earnestly contends, as to the penalties imposed, that the question of fraud was not properly raised by the pleadings before the Board, and hence that certain objections made by him at the hearing to evidence of fraud offered by the respondent should have been sustained, leaving no evidence in the record to support the imposition of the penalties. It is true that respondent did not affirmatively allege fraud in his answer, but simply denied that he had erred in making the assessment and denied generally the material allegations of fact in the petition. Nor did the petitioner expressly allege the absence of fraud. In his specifications he referred to certain of the defenses above mentioned, and declared that the computation of tax and penalties was erroneous, being based upon improper data and records, and not in accord with the facts. But it does not follow that the question of fraud was not in issue. It is obvious that the petitioner was

well aware that fraudulent conduct on his part formed the basis of the Commissioner's determination, for the petition itself contained the allegation on his part that the amounts assessed against him as penalties were assessed upon the ground that he had unlawfully and willfully attempted to evade payment of the taxes imposed upon him for the respective years. Moreover, as the Board pointed out in its opinion, the question of fraud was inherent in the Commissioner's determination. The jeopardy assessment of November 29, 1924, of $43,385.99, consisted of additional taxes and of penalties incurred from his willful attempt to evade the payment of taxes. He filed a claim in abatement of this assessment which was rejected on June 3, 1927, and the pending petition was filed by him to secure a review of this rejection by the Board.

Since the Commissioner's determination and assessment of penalties was based on a finding of fraud, the only way in which the taxpayer could get relief was to put the question of fraud in issue; for the Board has merely a revisory capacity and its jurisdiction is limited to the issues raised by the pleadings before it. Popular Price Tailoring Co. v. Commissioner (C. C. A.) 33 F.(2d) 464; Blair v. Mathews (C. C. A.) 29 F.(2d) 892; Boggs & Buhl, Inc., v. Commissioner (C. C. A.) 34 F.(2d) 859, 861. Therefore, unless it appears from the petition of the taxpayer that he contested the validity of the Commissioner's finding on the ground that fraud was not proved, the Commissioner's determination of fraud must necessarily stand. Compare Board of Tax Appeals v. United States, 59 App. D. C. 161, 37 F.(2d) 442. It would avail the taxpayer nothing in this case to interpret the general assignment of error above referred to in the manner which he now suggests as questioning only the correctness of the mathematical calculation involved in the assessment, for no error has been shown in this respect, and this interpretation would leave the finding of fraud by the Commissioner undisturbed. It may be added in passing that the point under discussion is purely formal and technical, because the Commissioner offered evidence which fully established fraudulent conduct on the part of the petitioner in connection with his tax return, and the petitioner offered no evidence on his behalf to the contrary. Under these circumstances, we think that the Board was correct in holding that the Commissioner's answer, filed on August 22, 1927, was in accord with rule 14 of the Board, which then provided, in substance, that the answer should fully advise the petitioner and the Board of the nature of the defense, and should contain a specific admission or denial of each material allegation of fact contained in the petition, and should set forth any new matters upon which the petitioner relies for defense or for affirmative relief. The issue of fraud was not new matter within the meaning of this rule because it was inherent in the Commissioner's prior determination; and it cannot be said that the petitioner was in need of advice that fraud was involved, since his petition disclosed that he was in possession of this information. Subsequent to the filing of the answer, section 601 of the Revenue Act of 1928, 45 Stat. 791 (26 USCA § 1219 (a) amending section 907 (a) of the Revenue Act of 1924, 43 Stat. 253, was passed providing for the first time that the burden of proving fraud should be upon the Commissioner; and, pursuant to this statute, the Board amended rule 14 to provide that the answer shall contain amongst other things a statement of any facts upon which the petitioner relies to sustain any issue raised in the petition in respect to which the burden of proof is placed upon the Commissioner; but this rule was not in effect in 1927 when the answer was filed, and such a statement was not then necessary.

This result disposes also of the first contention made by petitioner upon the facts as found by the Board, that the assessment of taxes and penalties for the years 1917, 1918, and 1919 was barred by the statute of limitations. Section 277 (a) (3) of the Revenue Act of 1926, 44 Stat. 9, 26 USCA § 1057 (a) (3), provides: "The amount of income, excess-profits, and war-profits taxes imposed by * * * the Revenue Act of 1917, the Revenue Act of 1918, and by any such Act as amended, shall be assessed within five years after the return was filed. * * *" Section 278 (a) (26 USCA § 1058) provides: "In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed * * * at any time." Since the Board has found, on proper and sufficient evidence, that petitioner's returns for 1917, 1918, and 1919 were false and fraudulent with intent to evade tax, and that no excess profits return was filed for 1917, the jeopardy assessment of November, 1924, was timely.

Petitioner's next contention is that there has been a valid compromise and settlement of his liability for taxes and penalties for the years 1917, 1918, and 1919, which prevents

further recovery for those years. He relies upon the authority given the Commissioner by R. S. § 3229 (26 USCA § 158), to compromise certain claims, the language of the provision being: "The Commissioner of Internal Revenue, with the advice and consent of the Secretary of the Treasury, may compromise any civil or criminal case arising under the internal-revenue laws instead of commencing suit thereon. * * * Whenever a compromise is made in any case there shall be placed on file in the office of the commissioner the opinion of the Solicitor of Internal Revenue, or of the officer acting as such, with his reasons therefor, with a statement of the amount of tax assessed, the amount of additional tax or penalty imposed by law in consequence of the neglect or delinquency of the person against whom the tax is assessed, and the amount actually paid in accordance with the terms of the compromise."

The evidence offered by petitioner to show that a compromise was effected in accordance with this section, tended to show that after an examination of petitioner's books by an internal revenue agent in 1923, and after receipt of the first deficiency letter, petitioner filed amended returns for the years 1917, 1918, and 1919, and also a protest to the deficiency letter in which he stated he was making an "offer of compromise in the amount of $12,880.55"; that at a conference between a representative of petitioner and certain subordinate officials in the bureau, the facts sworn to by petitioner in the protest and in the amended returns were discussed, and petitioner's contention that there had been no fraud in the original returns was apparently accepted; that at this conference a check for $12,880.55, payable to the Commissioner, which was tendered with the protest, was tentatively accepted; that it was agreed at a later conference that this check should be accepted as part payment of the total tax which the bureau's audit of the amended returns showed to be due, and that the balance of $7,263.22 should be met by a check payable to the collector of internal revenue for the district of North Carolina, where the taxpayer resided, and that this was done; that the check for $12,880.55 was indorsed by the Commissioner to the collector, and that both checks were indorsed by the latter official and deposited in bank, and that each check stated on its face that it was in full and final payment of all federal taxes and penalties for the years in question. Petitioner offered no evidence that the consent of the Secretary of the Treasury to the offer of compromise had been given, or that an opinion of the Solicitor of Internal Revenue had been placed on file, as required by the provisions of R. S. § 3229, above set out.

■■ On the other hand, the respondent offered evidence tending to show that there was no record in the office of the collector, or in the office of the General Counsel of the Bureau of Internal Revenue, or in the office of the Solicitor of Internal Revenue, that an offer of compromise had been tendered. This evidence was objected to by the petitioner, but the objection was properly overruled by the Board, since the evidence obviously tended to show that the requirements of the statute with respect to the consent of the Secretary of the Treasury, and of the filing of an opinion by the Solicitor of Internal Revenue had not been met. It was also shown that a carbon copy of an offer of compromise, dated June 14, 1923, which the petitioner claimed that he had filed with the collector on or about that date, was written on an official form that was not printed until August, 1924, and the petitioner made no effort to explain the discrepancy in dates. The Board of Tax Appeals held that the evidence failed to establish that a compromise had been reached in compliance with the provisions of R. S. § 3229, and since there was substantial evidence to support the finding, it is binding on this court. Ox Fibre Brush Co. v. Blair (C. C. A.) 32 F.(2d) 42, 68 A. L. R. 696.

Petitioner nevertheless contends that the evidence outlined brings the case within the rule laid down by this court in Oliver v. United States, 267 F. 544, where it was held by a divided court that upon the trial of the defendant for violating the Harrison Narcotic Act (26 USCA §§ 211, 691–707), it was error to reject evidence tending to show that the defendant had made an offer of compromise to the Commissioner of Internal Revenue, accompanied by a check in payment of the amount offered, which was indorsed by the Commissioner to the proper collector of internal revenue and deposited by the latter in bank. It was held that this evidence, in the absence of any evidence to the contrary, at least tended to show that the compromise had been approved and duly accepted by the proper officials of the government, in accordance with the statute. That case, however, is not controlling here for the evidence of the petitioner has been met by evidence on the part of the respondent creating an issue of fact upon which the Board has made a binding decision. Moreover, the more recent decision of the Supreme Court in Botany Mills v. United States,

278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379, is conclusive of the matter. There the taxpayer's books showed the necessity of an additional assessment, and after much correspondence and numerous conferences with subordinate officials of the Bureau of Internal Revenue, it filed an amended return and paid an additional tax based upon figures agreed upon in the conferences. But the Secretary of the Treasury did not consent to the settlement, and no opinion was filed by the Solicitor of Internal Revenue. The taxpayer sued to recover a part of the additional tax on the ground that it had been illegally collected, and was met with the defense that a binding agreement of compromise had been made. The Supreme Court said (page 288 of 278 U. S., 49 S. Ct. 129, 131, 73 L. Ed. 379):

"Here the attempted settlement was made by subordinate officials in the Bureau of Internal Revenue. And although it may have been ratified by the Commissioner in making the additional assessment based thereon, it does not appear that it was assented to by the Secretary, or that the opinion of the Solicitor was filed in the Commissioner's office.

"We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised, requiring therefor the concurrence of the Commissioner and the Secretary, and prescribing the formality with which, as a matter of public concern, it should be attested in the files of the Commissioner's office; and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode."

This result renders it unnecessary to consider several assignments of error relative to the admission of evidence as to what transpired at the conferences in the bureau, and as to the interpretation placed upon the result of those conferences by certain officials.

■■ There is no merit in petitioner's contention that his acquittal as to the years 1917, 1918, and 1919 upon an indictment charging willful attempts to defeat and evade tax in those years, operates, under the doctrine of res judicata, as a bar to the imposition of fraud penalties for those years. The criminal charges as to 1917, 1918, and 1919 related only to the amended returns which petitioner filed after the examination of his books in 1923, and the issue here involved, of fraud in the original returns, is wholly distinct. There can be no estoppel by judgment, where the

former and subsequent case do not involve the same claim or demand, unless the point or question to be determined in the later case is the same as that litigated and determined in the former. Tait v. Western Maryland Ry. Co., 289 U. S. 620, 53 S. Ct. 706, 77 L. Ed. 1405; Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195.

Finally petitioner contends that the fraud penalty of $357.41, assessed for the year 1921 under section 250 (b) of the Revenue Act of 1921 (42 Stat. 227, 264, 265), set forth in the note,[1] may not properly be imposed upon him because of his prior indictment and conviction in 1924 for having filed the same false and fraudulent return for 1921. The contention is, that the fraud penalty is a punishment for crime, and that, having once been punished in a criminal proceeding for the same offense, petitioner is protected from a second punishment by the Fifth Amendment to the Constitution, providing that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."

The Board found as a fact that the petitioner had been indicted and convicted of filing a false and fraudulent return for 1921, the return being his original return for that year and the same for which the penalty now under discussion was assessed; and following the language of section 250 (b), which specifically imposes the fraud penalty "in addition to other penalties provided by law for false or fraudulent returns," the Board approved the respondent's determination. It appears that the petitioner was found guilty of a violation of section 253 of the Revenue Act of 1921, 42 Stat. 268, which provides that "any individual * * * who willfully attempts in any manner to defeat or evade the tax imposed by this title, shall be guilty of a misdemeanor," and punished by fine and imprisonment.

Thus the question is presented whether a conviction under section 253 of the Revenue Act of 1921 for willfully attempting to defeat or evade a tax by the filing of a false or fraudulent return operates as a bar to the subsequent assessment and collection under section 250 (b) of that act of the added pen-

---

[1] "Sec. 250. * * * (b) * * * If any part of the deficiency is due to fraud with intent to evade tax, then, in lieu of the penalty provided by section 3176 of the Revised Statutes, as amended, for false or fraudulent returns willfully made, but in addition to other penalties provided by law for false or fraudulent returns, there shall be added as part of the tax 50 per centum of the total amount of the deficiency in the tax. In such case the whole amount of the tax unpaid, including the penalty so added, shall become due and payable upon notice and demand by the collector."

alty of 50 per centum of the deficiency found to exist in the same fraudulent return. Petitioner relies entirely upon United States v. La Franca, 282 U. S. 568, 51 S. Ct. 278, 75 L. Ed. 551, and United States v. Chouteau, 102 U. S. 603, 26 L. Ed. 246. It was held in the former case that a civil suit for the recovery of taxes and penalties, imposed by the earlier statutes upon the illegal manufacture and traffic in intoxicating liquors, and kept alive and increased by section 35 of title 2 of the National Prohibition Act (27 USCA § 52), was barred by a prior conviction involving the same unlawful conduct under the National Prohibition Act. The decision was based upon an interpretation of section 5 of the Willis-Campbell Act (27 USCA § 3), which provided that if any act should be both a violation of the earlier laws and also of the National Prohibition Act, a conviction under one statute should be a bar to a subsequent prosecution under the other. It was said that a contrary interpretation would give rise to a grave constitutional question; and it was pointed out that the so-called tax had no relation to the ordinary support of the government, but was an exaction imposed by statute as a punishment for an unlawful act, and that the fact that the second case was a civil action did not alter the rule that a person may not be twice punished for the same offense. In United States v. Chouteau, 102 U. S. 603, 26 L. Ed. 246, it was held that where the government had accepted a sum of money in compromise of the charges in an indictment for the removal of distilled spirits from a distillery, without paying the revenue tax thereon, it could not succeed in a civil suit for the recovery of a penalty for the same unlawful act, although R. S. § 3296 (26 USCA § 404) imposed not only a fine and imprisonment for unlawful removal, but also a penalty. Speaking of the defendant, the court said (page 611 of 102 U. S.): "He has been punished in the amount paid upon the settlement for the offence with which he was charged, and that should end the present action, according to the principle on which a former acquittal or conviction may be invoked to protect against a second punishment for the same offence. To hold otherwise would be to sacrifice a great principle to the mere form of procedure, and to render settlements with the government delusive and useless."

Respondent contends that the Fifth Amendment is inapplicable because (1) the identity of offenses necessary to give rise to the bar of double jeopardy has not been established, and (2) the fraud penalty imposed by section 250 (b) is not a punishment for crime. Respondent's first contention is based upon the doubtful ground that the offenses must be regarded as distinct because fraud, while expressly made essential to liability for the penalty provided by section 250 (b), is not a necessary ingredient of the criminal offense described in section 253. For the purposes of this case, however, we shall assume the identity of the offenses. Similarly, we shall assume, contrary to the contention of the respondent, that a second punishment, even though imposed as an administrative penalty, violates the prohibition of the Fifth Amendment that no person shall be twice in jeopardy for the same offense. But it does not follow that recovery of the penalty in this case is barred by the Fifth Amendment.

■■ It is manifest that Congress intended to impose upon such unlawful and fraudulent conduct as that of the taxpayer in this case not only a punishment by fine and imprisonment through criminal prosecution under section 253 of the Revenue Act of 1921, but also the added penalty under section 250 (b), to become due and payable upon notice and demand by the collector. Under such circumstances it has been held that the statute does not impose a second punishment for the same offense, but that the several penalties are parts of a whole which is not satisfied by the imposition of a part. Thus the case of In re Leszynsky, 15 Fed. Cas. 397, No. 8,279, involved a civil suit in which the United States had recovered a money penalty imposed by R. S. § 3318 (26 USCA § 329), and it was held that this judgment was not a bar to a subsequent criminal prosecution based on the same offense. Blatchford, Circuit Judge, quoting from People v. Stevens, 13 Wend. (N. Y.) 341, 342, said: "It is undoubtedly competent for the legislature to subject any particular offence both to a penalty and a criminal prosecution; it is not punishing the same offence twice. They are but parts of one punishment; they both constitute the punishment which the law inflicts upon the offence. That they are enforced in different modes of proceeding, and at different times, does not affect the principle. It might as well be contended that a man was punished twice, when he was both fined and imprisoned, which he may be in most misdemeanors."

He also said: "The 5th amendment to the constitution of the United States provides that no person shall 'be subject, for the same offence, to be twice put in jeopardy

of life or limb.' It is contended, for the United States, that the judgment in the civil suit, and the payment of it, did not subject the relator to be put in jeopardy of his life or limb. But, even though the spirit of this amendment be to prevent a second punishment, under judicial proceedings, for the same crime, so far as the common law gave that protection (Ex parte Lange, 18 Wall. (85 U. S.) 163, 170 [21 L. Ed. 872]), yet the criminal proceeding now instituted against the relator will not produce a second punishment for the same offence, but will only complete, on conviction, the punishment intended by congress. The 5th amendment was proposed by congress on the 25th of September, 1789, and was ratified by eleven states in that year and the following two years. But, that amendment has not been regarded by congress as preventing legislation such as that found in the statute now in question."

The decision of the Board of Tax Appeals is affirmed.